614 P.2d 547

**GAS COMPANY OF NEW MEXICO, a division of Southern Union Company, a Delaware Corporation, formerly Southern Union Gas Company, Plaintiff-Appellant,**

v.

**Fred O'CHESKEY, Commissioner of the Bureau of Revenue of the State of New Mexico, Defendant-Appellee.**

**No. 4308.**

Court of Appeals of New Mexico.

June 19, 1980.

Thomas W. Olson, Montgomery, Andrews & Hannahs, Santa Fe, Joel M. Carson, Losee, Carson & Dickerson, Artesia, for plaintiff-appellant.

Jeff Bingaman, Atty. Gen., Denise D. Fort, Asst. Atty. Gen., Santa Fe, for defendant-appellee.

## OPINION

SUTIN, Judge.

Pursuant to § 7–1–26, N.M.S.A.1978, the Gas Company sought a refund of gross receipts taxes paid for natural gas sold to Navajo Refining Company which uses gas in its refinery. Judgment was entered in favor of the Taxation and Revenue Department, and the Gas Company appeals. We affirm.

There is no dispute about the facts. The trial court found that the Gas Company provided natural gas utility services in various locations throughout New Mexico. It reported and paid the New Mexico gross receipts tax on its sales of natural gas to Navajo. Navajo tendered to the Gas Company a "Nontaxable Transaction Certificate" on a form not approved by the Commissioner. Approval of this form had been previously requested by Navajo and had been denied. The Gas Company did not store or use oil, natural gas or liquid hydrocarbon, nor was it in the business of refining these products when it sold natural gas to Navajo.

The trial court further found that Navajo was obligated, either pursuant to contract or an applicable utility tariff, to pay all New Mexico gross receipts taxes applicable to gas purchases from Gas Company. Thus, although Gas Company was the taxpayer for purposes of the transaction, the economic burden of the tax rested upon Navajo. Gas Company refused to accept the "Nontaxable Transaction Certificate" tendered by Navajo because it was presented on a form which had not been approved by the Commissioner. The Commissioner refused to approve the form because it viewed the sale and purchase of natural gas between Gas Company and Navajo as a taxable transaction. Following the tender and rejection of the "Nontaxable Transaction Certificate," Navajo filed suit against Gas Company seeking judgment relieving Navajo of any obligation to reimburse Gas Company for gross receipts taxes on the ground the transactions between Navajo and Gas Company were not subject to the tax.

The trial court concluded that the "Nontaxable Transaction Certificate" issued by Navajo to Gas Company was not an issue in the case because it was not in a form approved by the Bureau, and it was not accepted by Gas Company; that Gas Company was taxable under the Gross Receipts Tax Act when it sold natural gas to Navajo; that purchasers of goods and services are not taxable even though the economic burden of the gross receipts tax may be passed on to the purchaser by the seller; that the use to which purchasers put a good or service is of no consequence in determining liability for the gross receipts tax because the purchaser is not taxable under the provisions of the Gross Receipts Tax Act; that only taxpayers who are taxable under the Act may claim an exemption from the tax; that Navajo is not taxable under the Act when it purchases gas from Gas Company, and it is not entitled to claim an exemption from the Act under § 7–9–34(B), N.M.S.A. 1978; that the Gas Company is not entitled to an exemption under § 7–9–34(B) for its receipts derived from sales of natural gas to Navajo; and Gas Company is not entitled to a refund of gross receipts taxes paid on its receipts derived from selling natural gas to Navajo.

Gas Company challenged only the conclusions of law, not the facts.

The Gas Company states:

> The principal dispute with the Bureau involves the construction of Section 7–9–34(B) NMSA, 1978 Comp. The Bureau contends that because Gas Company sells natural gas to Navajo who uses it in its refinery, the exemption of Section 7–9–34(B) cannot apply. It also contends that the exemption of the statute cannot apply to Navajo because the incidence of the tax is upon Gas Company.

We agree with the Bureau. The sales, initially, were subject to the gross receipts tax. Sections 7–9–3(F) and 7–9–4, N.M.S.A.1978. Gas Company seeks to avoid the tax on the basis of the exemption set forth in § 7–9–34(B). It reads in pertinent part:

> No provision of the . . . Act shall apply to the . . . use of . . . natural gas . . . when . . .

used by a "processor," as defined by the Natural Gas Processors Tax Act, or by a person engaged in the business of refining oil . . . or uses the . . . natural gas . . . in the regular course of his refining business.

■ The Gas Company was neither a user of natural gas nor in the business of refining natural gas when it sold natural gas to Navajo. The incidence of the tax was upon the Gas Company. Gas Company was not entitled to the exemption provided in § 7–9–34(B) and the trial court so held.

■ On the other hand, the Gross Receipts Tax Act was not applicable to Navajo. It was not taxable under the Act. It was taxable under the Natural Gas Processors Tax Act. Section 7–33–1 et seq., N.M.S.A.1978.

■ Thus, Gas Company is taxable under the Gross Receipts Tax Act and Navajo is taxable under the Natural Gas Processors Tax Act. Nevertheless, Navajo was obligated, either pursuant to contract or an applicable utility tariff, to pay all gross receipts taxes applicable to gas purchases from the Gas Company. The economic burden of the tax was upon Navajo. The Gas Company was not required to collect the tax from Navajo but it did so by contract. It passed the tax on to Navajo. It may do so. This is a common practice in New Mexico. Navajo may bear the burden of the tax. *First National Bank v. Commissioner of Revenue*, 80 N.M. 699, 460 P.2d 64 (1969).

If we understand Gas Company's syllogistic reasoning correctly, it says:

(1) Navajo furnished Gas Company with a "Nontaxable Transaction Certificate" to relieve Gas Company from paying the tax.

(2) The Bureau refused to approve the certificate because it did not conform to law.

(3) Therefore, Navajo who wants to become a taxpayer is not protected under Section 7–9–34(B) because it cannot become a taxpayer. It was the Bureau's conduct that rendered the statute meaningless.

■■ In other words, the Bureau should not follow the law in order to allow Navajo to avoid its economic burden. The issuance of a "Nontaxable Transaction Certificate" does not operate to transform an otherwise taxable transaction into a nontaxable transaction. It represents a statement by the purchaser of goods that its use is such that the seller is entitled to a *deduction* from its taxable receipts. Section 7–9–43(A), N.M. S.A.1978. It does not grant Gas Company an exemption. The issuance of the certificate would have been improper because the statute does not provide a deduction for the seller in the instant case regardless of the purchaser's use. The one instance where the issuance of a certificate does operate to switch the burden of a tax is where it has been accepted by the seller in good faith although it was wrongfully issued. *Leaco Rural Tel. Coop., Inc. v. Bureau of Revenue*, 86 N.M. 629, 526 P.2d 426 (Ct.App. 1974).

The trial court properly held that there was no issue in the case as to the possible effect of the certificate when the Gas Company refused to accept it when tendered by Navajo.

What the Gas Company seeks to do is to remove the economic burden from Navajo. As Gas Company stated in the trial court, "the only way that *Navajo* can get the benefit of this exemption . . . is if this purchase between Navajo *and Gas Company* is exempted from the tax." [Emphasis added.] Gas Company seeks to position itself in Navajo's shoes. It argues that since § 7–9–34(B) grants an exemption to Navajo, it grants an exemption to Gas Company from payment of the gross receipts tax imposed upon it by law. It would be likewise said that since Navajo is not subject to the Gross Receipts Tax Act, the Gas Company should not be subject to the Act.

The Gas Company, to arrive at this novel conclusion, argues that it was the intention of the legislature to say:

The unusual provisions of Sections 7–9–33 and 7–9–34, supra, must be fitted into the statutory scheme for what they really are—*language intended to exempt the gross receipts of the seller or the value to the buyer* of certain products used in the processing . . . . [Emphasis added.]

■ How the Gas Company discovered the intention of the legislature, we do not know. The cases cited do not state rules of statutory construction that are applicable. It has been stated innumerable times that legislative intent is to be determined primarily by the language used in the statute. We will not apply any rules of statutory construction to override an intent which is clear and plainly appears.

■ Section 7–9–34(B) is clear and unambiguous. It says that Navajo is not subject to the Gross Receipts Tax Act for the use of natural gas or as a "processor," or by reason of the fact that it is engaged in the business of refining oil or uses natural gas in the regular course of its refining business. To argue that this "language intended to exempt the gross receipts of the seller or the value to the buyer" is an attempt to pole vault to an exemption without a pole.

The Gas Company seeks to find an ambiguity arising out of the heading of § 7–9–34 described as "EXEMPTION; GROSS RECEIPTS TAX; REFINERS AND PERSONS SUBJECT TO NATURAL GAS PROCESSORS TAX ACT." The word "EXEMPTION" is derived from the fact that Navajo would have been subject to the payment of a compensation tax for use of natural gas if it were subject to the Gross Receipts Tax Act. The Act, being inapplicable, Navajo is exempt from the payment of the use tax. We find no ambiguity.

When the legislature intended to provide an exemption, either from gross receipts or compensation tax, it has specifically done so. See §§ 7–9–33, –36, –37 and –38, N.M. S.A.1978. The fact that the legislature did not provide for an exemption for the sale as well as the use of a product does not show the legislature intended to exempt the sale thereof. For a comparable exercise of legislative intent, see, *Union County Feedlot, Inc. v. Vigil*, 79 N.M. 684, 448 P.2d 485 (Ct.App. 1968).

■ We have heretofore interpreted tax laws and exemptions. It is settled law that no claim of exemption should be sustained unless within the express letter or necessary scope of the exempting clause. *Gibbons & Reed Company v. Bureau of Revenue*, 80 N.M. 462, 457 P.2d 710 (1969). Gas Company's claim of exemption is neither within the express letter nor necessary scope of § 7–9–34(B).

By an erroneous, circuitous route, the Gas Company wants this Court to direct the Commissioner to accommodate the Gas Company, refund to it the taxes paid, and remove the economic burden from Navajo. This, of course, we will not do. What effect it may have on litigation between Navajo and the Gas Company is of no concern to this Court.

Affirmed.

IT IS SO ORDERED.

WOOD, C. J., specially concurring.

HERNANDEZ, J., concurring with WOOD, C. J.

WOOD, Chief Judge (specially concurring).

Gas Company presented two issues: 1. The trial court erred in contending that Gas Company must pay gross receipts tax upon receipts derived from its sales to Navajo. 2. Section 7–9–34(B), N.M.S.A.1978 should be construed to provide an exemption from sales, because that statute provides an exemption from use. Judge Sutin holds that Gas Company must pay the tax on sales, and that there was no basis for construing § 7–9–34(B), supra, as the Gas Company contends. I agree and join in Judge Sutin's disposition of the two issues raised.

I do not join in Judge Sutin's opinion because there is no issue as to Navajo being subject to the Natural Gas Processors Tax and no issue concerning a non-taxable transaction certificate. As Gas Company's counsel stated in the trial court: "The only consequence it [the NTTC] has is the demonstration that 7–9–34(b)[B] must mean something . . . ."

Accordingly, I specially concur.

HERNANDEZ, J., concurs.