629 P.2d 1225

**TIFFANY CONSTRUCTION COMPANY, INC., Petitioner,**

v.

**BUREAU OF REVENUE of the State of New Mexico, Respondent.**

No. 13290.

Supreme Court of New Mexico.

June 1, 1981.

McCulloch, Grisham & Lawless, Thomas L. Grisham, Albuquerque, for petitioner.

Jeff Bingaman, Atty. Gen., Sarah Bennett, Gerald Richardson, Asst. Attys. Gen., Santa Fe, for respondent.

## OPINION

FEDERICI, Justice.

The issue before this Court on certiorari is whether the State of New Mexico has a right to impose a gross receipts tax on a non-Indian contractor's activities on an Indian reservation. We discuss: (I) Whether the petitioner, Tiffany Construction Company, Inc., properly preserved its right to appeal, and (II) Whether respondent, the State of New Mexico, may constitutionally levy a New Mexico gross receipts tax upon petitioner.

Tiffany Construction Company, Inc. (Tiffany), an Arizona corporation, engaged in a construction project concerning grading and draining a section of road built and maintained by the Bureau of Indian Affairs. The road is located entirely within that portion of the Navajo Reservation which is within the State of New Mexico. Tiffany enjoyed the use of roads located on the reservation but maintained by the State of New Mexico. It also benefited from New Mexico pollution control regulations as well as the overall general protection afforded contractors by the laws of the State of New Mexico. The New Mexico Bureau of Revenue assessed gross receipts taxes, penalties and interest of $78,583.03 against Tiffany for its road building activities concerning this project.

Pursuant to Section 7–1–24, N.M.S.A. 1978 (Repl.Pamp.1979), Tiffany protested the penalty of $1,412.05 in an administrative proceeding on the basis that it did not negligently fail to pay taxes owed. The administrative decision against Tiffany was

affirmed on appeal in *Tiffany Const. Co., Inc. v. Bureau of Revenue*, 90 N.M. 16, 558 P.2d 1155 (Ct.App.1976), *cert. denied*, 90 N.M. 255, 561 P.2d 1348 (1977)—(*Tiffany I*). In September 1975, Tiffany paid $32,343.02 in gross receipts taxes, a penalty of $1,412.05 and interest of $343.19. Tiffany later paid $46,240.01 in monthly assessments.

Tiffany then commenced the present action under Section 7–1–26, N.M.S.A. 1978 (Repl.Pamp.1979), seeking a refund of all principal paid. The district court held that Tiffany was not entitled to a refund because Tiffany's previous protest of only the penalty constituted an election of remedies as to the earlier assessment pursuant to Section 7–1–23, N.M.S.A. 1978 (Repl.Pamp. 1979), and that, therefore, Tiffany could only protest the later self-assessment of $46,240.01. Further, the district court held that the assessment of the tax itself was proper. The decision of the district court was upheld on appeal in *Tiffany Const. Co. Inc. v. Bureau of Revenue*, 93 N.M. 593, 603 P.2d 332 (Ct.App.1979), *cert. denied*, 94 N.M. 629, 614 P.2d 546 (1979)—(*Tiffany II*).

Tiffany filed a petition for writ of certiorari in the Supreme Court of the United States. Tiffany contended that imposition of the gross receipts tax violated the Treaty of 1868, and infringed on the right of reservation Indians to make their own laws and be ruled by them. *In Tiffany Construction Co., Inc. v. Bureau of Revenue, State of New Mexico*, 448 U.S. 902, 100 S.Ct. 3041, 65 L.Ed.2d 1132 (1980), the United States Supreme Court granted certiorari and ordered that the judgment of the Court of Appeals of New Mexico be vacated and the case remanded for further consideration in light of *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980), and *Central Machinery Co. v. Arizona State Tax Comm'n*, 448 U.S. 160, 100 S.Ct. 2592, 65 L.Ed.2d 684 (1980).

Tiffany then filed a motion for judgment in the Court of Appeals asking that judgment be rendered in accordance with the United States Supreme Court order. The Court of Appeals denied Tiffany's motion, finding that neither the issue of preemption nor the issue of infringement on Indian

sovereignty was properly raised on appeal. The Court of Appeals also denied Tiffany's motion for reconsideration of its order. *Tiffany Const. Co., Inc. v. Bureau of Revenue, State of New Mexico*, 96 N.M. 304, 629 P.2d 1233, 19 N.M.St.B.Bull. 918 (1980). We granted certiorari and reverse the Court of Appeals in part and affirm in part.

## I. *PRESERVATION OF RIGHTS ON APPEAL.*

◼ The initial question to be determined is whether petitioner sufficiently raised the issues of federal preemption and state infringement on Indian sovereignty in the lower courts to allow consideration on appeal. A review of the record discloses that petitioner raised the issue of preemption in the district court. Further, petitioner discussed the issue of preemption as developed in *Warren Trading Post v. Arizona Tax Comm'n*, 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965), in which the Court held that Congress had so comprehensively legislated and regulated concerning trading by non-Indians on Indian reservations that no room remained for states to legislate on the subject. Petitioner also argued that the imposition of a gross receipts tax on a non-Indian performing services for Indians on Indian land would violate the disclaimer clause of the New Mexico Constitution. N.M.Const. Art. XXI, § 2. Petitioner argued that the governmental disclaimer of any proprietary interest in Indian lands precluded this tax. Petitioner also requested findings of fact and conclusions of law in support of its preemption and infringement contentions. On appeal, petitioner again argued both the preemption and infringement issues.

◼ Even if there is some question that petitioner did not sufficiently raise these issues on appeal, as the Court of Appeals held, this Court can consider them if the test in *DesGeorges v. Grainger*, 76 N.M. 52, 412 P.2d 6 (1966), is met. *DesGeorges* recognized three exceptions to the general rule that questions of law not raised in the trial court cannot be considered on appeal.

These exceptions are: (1) jurisdictional questions; (2) questions of a general public nature affecting the interest of the state at large; and (3) questions that must be determined in order to protect the fundamental rights of one of the parties. The second exception applies in this case. As in *Des-Georges*, we have before us a case involving questions of a general public nature affecting the interest of the state at large. Therefore, the issues of preemption and infringement will be considered by this Court.

## II. WHETHER THE STATE OF NEW MEXICO MAY CONSTITUTIONALLY LEVY UPON PETITIONER, TIFFANY CONSTRUCTION COMPANY, INC., A NEW MEXICO GROSS RECEIPTS TAX—FEDERAL PREEMPTION AND STATE INFRINGEMENT ON INDIAN SOVEREIGNTY AND SELF-GOVERNMENT.

The federal preemption doctrine was developed in *Warren Trading Post v. Arizona Tax Comm'n, supra.* In that case, the Supreme Court struck down a gross receipts tax levied by the State of Arizona against a federally licensed non-Indian trader on its income from trading with Navajo Reservation Indians. The United States Supreme Court held that comprehensive federal regulation of Indian traders preempted that area of taxation. We note that in *Warren Trading Post*, the operator on whom a state income tax was levied by the State of Arizona maintained his trading post on the Indian reservation, *and Congress had broadly occupied the field of trading with Indians on reservations by all-inclusive regulations and statutes.* Therein lies the distinction between *Warren Trading Post* and the present case.

*White Mountain Apache Tribe, supra,* is distinguishable from the present case. In that case, the State of Arizona attempted to impose a motor carrier license and use fuel taxes on a logging company which was harvesting and hauling timber for an Apache tribe on its reservation. The roads used by the company were built, maintained and policed exclusively by the federal government, and the state could not point to any specific benefit the logging company received from it. A comprehensive federal regulatory scheme governed the harvesting and sale of the tribal timber, requiring day-to-day supervision by the Bureau of Indian Affairs. The objectives of this comprehensive scheme included encouraging tribal self-government.

*Central Machinery Co., supra,* is also distinguishable. In that case, the State of Arizona attempted to impose a transaction privilege tax on an Arizona corporation's sale of farm machinery to an Indian tribal enterprise. The sale took place on the reservation, and was subject to federal regulation. Because the Indian Trader statutes, 25 U.S.C. §§ 261–264, created a comprehensive regulatory scheme concerning transactions of this nature, federal preemption applied and the state could not impose its tax.

■■ The second alleged barrier to imposition of the New Mexico gross receipts tax is that a state cannot infringe on Indian sovereignty. In *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), a federally licensed non-Indian trader attempted to pursue a civil suit against two reservation Indians in an Arizona court. The Supreme Court held that the Arizona court was not free to exercise jurisdiction because that would undermine the authority of the tribal courts and infringe on the right of the reservation Indians to govern themselves. The test enunciated there was "whether the state action infringe[s] on the right of reservation Indians to make their own laws and be ruled by them." *Id.* at 220, 79 S.Ct. at 270.

■ In the case now before us, there is no infringement on the Indians' right of self-government. The incidence of the New Mexico gross receipts tax is upon a non-Indian contractor who has benefited from state governmental activities and services and is now being taxed. If there is any burden on the Navajo Indians, it is indirect. The gross receipts tax for services performed is solely upon Tiffany for construction of roads. No federal statute or federal regulations or Navajo Indian tribal law has been called to our attention which indicates

that this tax in any way interferes with the enjoyment of self-government by the Navajo Reservation Indians.

In the case now before us, we are concerned with the New Mexico gross receipts tax. Section 7–9–4, N.M.S.A. 1978 (Repl.Pamp.1980), provides that the gross receipts tax is imposed "[f]or the privilege of engaging in business ... in New Mexico." The legal incidence of this tax is on the seller or contractor, whether the contract is with the federal government, *United States v. State of N.M.*, 581 F.2d 803 (10th Cir. 1978), or with an Indian tribe, *Mescalero Apache Tribe v. O'Chesky*, 625 F.2d 967 (10th Cir. 1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1417, 67 L.Ed.2d 383 (1981). This tax can be constitutionally imposed on contractors doing work on Indian reservations in the state. *Mescalero Apache Tribe v. O'Chesky, supra; United States v. State of N.M., supra; G. M. Shupe, Inc. v. Bureau of Revenue*, 89 N.M. 265, 550 P.2d 277 (Ct.App.1976), *cert. denied*, 89 N.M. 321, 551 P.2d 1368 (1976).

We note that *Mescalero Apache Tribe* was decided by the Tenth Circuit Court of Appeals on June 5, 1980. *Mescalero Apache Tribe* involved substantially the same issue and the identical state gross receipts tax which are now before us. The United States Supreme Court denied certiorari in *Mescalero Apache Tribe* on February 24, 1981. The *Mescalero Apache Tribe* case is most squarely on point with our present case. There, the State sought to impose its gross receipts tax on several contractors who had done construction work for the Mescalero Apache Tribe on a resort complex and other projects on reservation lands. The court found that no problem of preemption was present because it was not an area long regulated by Congress. The court did not find an infringement of rights of tribal self-government. The Tenth Circuit Court of Appeals held that the incidence of the tax was directly upon the non-Indian building contractors and only indirectly imposed on the Tribe. Concerning incidence of the tax, the Court quoted from *United States v. State of N. M., supra,* with approval:

This court considered the same tax in *United States v. State of N. M.*, 581 F.2d 803 (10th Cir.), and decided that the sovereignty of the United States did not prevent the imposition of this tax on a contractor providing services to the federal government on federal lands. We there also necessarily considered the incidence of this tax.

"Thus, the decisive issue in this case is whether the legal incidence the challenged New Mexico taxes falls on the United States, regardless of where the economic burden ultimately rests....

. . . .

"The Act specifically makes the gross receipts tax applicable in New Mexico without reference to whether that business is with the United States and, with uniformly applied exceptions, assesses the tax upon anyone receiving compensation. There is no evidence that the tax interferes with the performance of federal functions. The tax is not directly imposed on the United States and, although the contractors pass the tax on to the United States they are not required by the Act to do so."

The Court then continued on its own:

The incidence of this tax cannot be different here just because Indians are involved. The tax is the same, the incidence remains the same, and it is clearly on the contractor. The Indians here are in no different position than was the federal government in *United States v. State of N. M.*, 581 F.2d 803 (10th Cir.).

The Court then concluded:

Thus we are left with the non-discriminatory state gross receipts or privilege tax the incidence of which is on the building contractors. The contractors benefitted from state governmental activities and services during the time they performed the services taxed. It is obvious that the indirect burden is on the one for whom services were performed as recognized in *United States v. State of N. M.*, 581 F.2d 803 (10th Cir.). This indirect burden was not enough there, and it is

not enough here. The only measure here is whether this indirect burden constitutes an interference with the internal affairs of the Mescaleros. It is a non-discriminatory tax levied on all contractors. It is something everybody pays. The indirect burden is, as we have said above, something to be again passed on as the Tribe engages in its resort and other business. It is the indirect consequences of taxes *on others* which reaches the Mescaleros as to all other costs, levies and taxes on persons with whom they do business. If this is an interference, all such taxes and levies on those doing business with them, the suppliers of such persons, the wholesalers and the manufacturers are likewise an interference. All these taxes affect the *money* of the Mescaleros the same way, and the money available for other purposes.

Id. at 969, 971–72.

■ Because of the language and the incidence of the New Mexico Gross Receipts Tax Act and of the particular facts in this case, and of established case law in New Mexico and in the federal courts, including the Supreme Court of the United States, we are of the opinion that the State of New Mexico can constitutionally levy upon Tiffany Construction Company, Inc., the New Mexico gross receipts tax.

The judgment of the Court of Appeals of New Mexico is reversed insofar as it holds that Tiffany Construction Company, Inc., has no standing in the appeal. The original judgment of the Court of Appeals of New Mexico which holds that the New Mexico gross receipts tax may be levied on Tiffany Construction Company, Inc., is affirmed.

IT IS SO ORDERED.

EASLEY, C. J., and PAYNE and RIORDAN, JJ., concur.

SOSA, Senior Justice, dissents.

SOSA, Senior Justice, dissenting.

I respectfully dissent from the majority's opinion. The gross receipts tax imposed by the State upon Tiffany is impermissible because the field of road construction and maintenance on Indian Reservations has been preempted by the federal government and, even if it has not been completely preempted, this tax infringes upon the Navajo Tribe's right to govern themselves by entering into private contracts with foreign corporations and by building tribal roads. Consideration of the doctrines of preemption and infringement is clearly within the United States Supreme Court mandate that the present case be reconsidered in light of *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980) and *Central Machinery Co. v. Arizona State Tax Com'n*, 448 U.S. 160, 100 S.Ct. 2592, 65 L.Ed.2d 684 (1980).

Whenever the State attempts to exercise regulatory jurisdiction over the activities of non-Indians on Indian lands, careful consideration of the rights and interests of the parties is mandated.

This inquiry is not dependent on mechanical or absolute conceptions of State or tribal sovereignty, but has called for a particularized inquiry into the nature of the State, Federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law.

*White Mountain Apache Tribe v. Bracker, supra*, 100 S.Ct. at 2584.

Chief Justice Marshall's view of tribal sovereignty that the laws of a state can have no force within reservation boundaries, *Worcester v. Georgia*, 6 Pet. 515, 8 L.Ed. 483 (1832), has now given way to the notion that the tribes are in

a semi-independent position ... not as States, not as nations, not as possessed of the full attributes of sovereignty, but as a separate people, with the power of regulating their internal and social relations, and thus far not brought under the laws of the Union or of the State within whose limits they resided.

*White Mountain Apache, supra*, 100 S.Ct. at 2583, quoting *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 173, 93 S.Ct. 1257, 1262, 36 L.Ed.2d 129 (1973) and *United States v. Kagama*, 118 U.S. 375, 381–82, 6 S.Ct. 1109, 1112–13, 30 L.Ed. 228 (1886).

The semi-independent status of the tribes, combined with the Commerce Clause, has given rise to two independent but related barriers to the assertion of state regulatory authority: the federal preemption doctrine and the doctrine of infringement upon the Indians' right to self-government.

The first such barrier is the federal preemption doctrine, which was developed in *Warren Trading Post v. Arizona Tax Comm'n*, 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965). In that case, the Supreme Court struck down a gross receipts tax levied by the State of Arizona against a licensed non-Indian trader on his income from trading with Navajo Reservation Indians. The United States Supreme Court held that comprehensive federal regulation of Indian traders preempted that area of taxation. If the federal government has preempted the field, then *any* interest which the State may have in taxation of this corporation, no matter how compelling or enormous that interest may be, must give way to the federal interest. The incidence of the tax is also irrelevant under a preemption analysis.

The rule expressed in *Warren* has now been expanded by *Central Machinery Co. v. Arizona State Tax Com'n, supra*, where the United States Supreme Court found that the Arizona gross receipts tax could not be assessed against a non-licensed, non-Indian vendor who sold tractors on the Gila River Reservation in Arizona. The Court, in *Central Machinery*, held that the transaction was clearly covered by the Indian trader statutes, 25 U.S.C. §§ 261–264 (1977). The Court also seemed to be saying that preemption occurs under these statutes regardless of where the burden of the tax falls, even though it took care to point out that the economic burden of the taxes would fall upon the Indian tribe. 100 S.Ct. at 2595, n. 3.

In *White Mountain Apache Tribe, supra,* the Court held that Arizona could not assess its motor-carrier license (assessed on the basis of gross receipts) and use fuel taxes (assessed on the basis of road use) against non-Indian logging corporations operating solely on the Fort Apache Reservation. The federal government's regulation of the harvesting of Indian timber and of Bureau of Indian Affairs roads was found to be so comprehensive as to preempt state taxation. The majority opinion in the present case attempts to distinguish *White Mountain Apache* on the basis of a "comprehensive federal regulatory scheme govern[ing] the harvesting and sale of the tribal timber." The opinion, however, fails to recognize that the United States Supreme Court also found the Arizona tax preempted by the extensive federal regulations governing roads developed by the Bureau of Indian Affairs. 100 S.Ct. at 2586. This is involved in our case.

> The Secretary [of Interior] has also promulgated regulations governing the roads developed by the Bureau of Indian Affairs. 25 CFR Part 162. Bureau roads are open to "[f]ree public use." § 162.8. Their administration and maintenance are funded by the Federal Government, with contributions from the Indian tribes. §§ 162.6–162.6a.

*Id.* We have in the instant case the identical federal regulations detailing the construction of the road by Tiffany on the Navajo Reservation. The existence of these federal regulations indicates a strong federal interest in the area of road construction on tribal lands sufficient to justify preemption of the State's tax on Tiffany's gross receipts derived from this project. This is so despite the implication by the majority's opinion in this case that Congress has not specifically preempted this field. As was stated in *White Mountain Apache*, 100 S.Ct. at 2587, "a claim that [the State] may assess taxes on non-Indians engaged in commerce on the reservation whenever there is no express congressional statement to the contrary . . . is simply not the law."

If the regulations are not so pervasive as to preempt the field completely, then we must balance the interests to determine whether the State's interest is sufficient to overcome the federal interest. We find that in this case it is not. The imposition of a gross receipts tax on a foreign corporation not licensed to do business in this State, whose employees traveled and worked exclusively within the Navajo Reservation

pursuant to a contract with BIA and the Tribe is not such an overriding State interest. Contrary to the majority opinion in this case, Tiffany receives very little benefit from the State when compared with the strong federal policy of recognizing Indian sovereignty.

> [T]his is not a case in which the State seeks to assess taxes in return for governmental functions it performs for those on whom the taxes fall. Nor have respondents been able to identify a legitimate regulatory interest served by the taxes they seek to impose. They refer to a general desire to raise revenue, but we are unable to discern a responsibility or service that justifies the assertion of taxes imposed for on-reservation operations conducted solely on tribal and Bureau of Indian Affairs roads.

*White Mountain Apache, supra,* at 2587.

The second barrier to state regulatory authority is that a state cannot infringe upon Indian sovereignty. Thus in *Williams v. Lee,* 358 U.S. 217, 220, 79 S.Ct. 269, 270, 3 L.Ed.2d 251 (1959), the test became "whether the state action infringe[s] on the right of reservation Indians to make their own laws and be ruled by them." Analysis of the infringement doctrine involves a balancing of the State's interest in taxation against the right of Indians to govern themselves. I disagree with the majority opinion in the present case that the gross receipts tax imposed upon this corporation does not infringe upon the Navajo Tribe's right to self-government. The majority failed to recognize the rather tenuous connection between the State's benefits and Tiffany. Had they done so, the State's interest would have been subordinated to the overwhelming interest of the Navajo Tribe in performing its governmental function of contracting for the construction of tribal roads. Tiffany was not a New Mexico corporation nor was it licensed to do business in this State. Its employees were Arizona residents who lived at the construction site on the Reservation during the construction of the road. All of the materials for the construction were purchased in Arizona or from the Tribe and were brought to the construction site by way of roads located entirely within the Reservation. The argument made by the majority that Tiffany benefitted from New Mexico's air pollution control regulations and its employees were protected generally by the laws of this State is superficial and ignores the fact that citizens from other states also enjoy the benefit of our clean air traveling over their states without being subject to our taxation. The benefits to Tiffany were incidental arising only from the mere fact that the portion of the Reservation containing the construction site happens to lie within the territorial boundaries of New Mexico. This insufficient nexus between Tiffany and the State cannot justify imposition of the tax.

I also disagree with the majority opinion which attempts to apply *Mescalero Apache Tribe v. O'Cheskey,* 625 F.2d 967 (10th Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 1417, 67 L.Ed.2d 383 (1981) to this case. The *Mescalero* case is easily distinguished from the case at hand. There the contractors for the Inn of the Mountain Gods located on the Mescalero Apache Reservation were New Mexico contractors licensed to do business in the State; they traveled onto the Reservation by way of State owned and maintained roads; their employees paid New Mexico income tax; the contractors paid New Mexico unemployment compensation and workmen's compensation taxes. These contractors truly received State benefits. None of these factors apply to Tiffany.

The majority here upholds the State tax because it is a tax which falls directly upon the contractor and only indirectly upon the Tribe. They cite *Mescalero* for the proposition that an indirect tax on Indians is permissible, but fail to recognize that the indirect tax in *Mescalero* could be "passed on as the Tribe engages in its resort and other business" (625 F.2d at 972), whereas the tax in this case cannot be passed on to anyone except the Tribe itself. This, then, is the key distinction between the *Mescalero* case and this case since the Tenth Circuit Court of Appeals repeatedly emphasized the fact that the tax could be passed on to the consumer. In addition, the construction of a resort complex is in the nature of a pro-

prietary project of the Tribe for tourist consumption, whereas a road is in the nature of a public or governmental function which provides an essential service to the Tribe.

Imposition of the gross receipts tax on the proceeds of the contract between Tiffany and BIA and the Navajo Tribe is unsupported by the law. Under the doctrines of federal preemption and infringement, we should reverse the Court of Appeals and remand this case to the district court for entry of judgment consistent with this opinion.