786 P.2d 1221

PHILLIPS MERCANTILE
COMPANY, Appellant,

v.

The NEW MEXICO TAXATION AND
REVENUE DEPARTMENT, Appellee.

No. 10650.

Court of Appeals of New Mexico.

Jan. 16, 1990.

Charles L. Saunders, Jr., Colin L. Adams, Kemp, Smith, Duncan & Hammond, P.C., Albuquerque, for appellant.

Hal Stratton, Atty. Gen., Carolyn A. Wolf, Sp. Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

ALARID, Judge.

Taxpayer, Phillips Mercantile Company (Phillips), appeals a decision and order of the Secretary of the Taxation and Revenue Department of the State of New Mexico (the department) upholding the assessment of compensating tax on the value of catalogs and newspaper inserts purchased by Phillips. On appeal, Phillips contends: (1) contracting for the distribution of the catalogs and newspaper inserts is not a taxable use of them: (2) purchase of the newspaper inserts would not have been subject to gross receipts tax had it occurred in New Mexico: (3) the correct tax base for the compensating tax is 77% of the amount taxpayer was billed: and (4) assessment of a negligence penalty is improper. We affirm.

*FACTS*

This matter was before the department's hearing officer on stipulated facts and the

briefs of the parties. Phillips, doing business as Value House, retails a variety of consumer goods at stores in Santa Fe and Albuquerque and by mail order. During the audit period, Phillips used the services of what are known in the trade as coordinators. In 1981, Phillips used Mutual Merchandising Coop. of New York City, and between 1982 and 1986, the coordinator used was Paul Schultz Catalogues of Louisville, Kentucky. All of these coordinators' activities occurred outside of New Mexico.

Essentially, the coordinator solicits manufacturers and produces an annual trade show for retailers like Phillips. After attending the trade show, retailers decide what goods to offer for sale. The coordinator then develops a program to promote retail sales through catalogs, mailers, and newspaper inserts, which the coordinator designs, produces, and ships via common carrier. Retailers determine the quantity of catalogs and inserts they require and how those printed materials should be distributed.

Phillips contracted with the *Albuquerque Journal/Tribune* and the *Santa Fe New Mexican* to distribute newspaper inserts, and the inserts were shipped directly to those newspapers from the printer. The inserts bore the legend, "Supplement to the Albuquerque Journal/Tribune and Santa Fe New Mexican." Phillips contracted with a mailing service in Albuquerque to address and mail the catalogs and other mailing pieces to New Mexico residents. Phillips had approximately 90% of the catalogs and mailing pieces shipped to the Albuquerque mailing service and approximately 99.35% of the newspaper inserts shipped to the three New Mexico newspapers. Phillips had the remainder of the catalogs and inserts shipped to its retail stores in New Mexico for use in those stores.

Phillips paid the coordinators for their activities on the basis of a fixed price per catalog or insert. Paul Schultz Catalogues has stated that 77% of its charges were attributable to printing and manufacturing the catalogs and inserts and that 23% was for related services. There was no information providing a similar breakdown for Mutual Merchandising Coop.

## DISCUSSION

1. Whether Phillips' contracting for the distribution of the catalogs and newspaper inserts was a taxable use of them.

■ Phillips contends that it did not "use" the catalogs, mailers, and newspaper inserts within the meaning of NMSA 1978, Section 7–9–7 (Repl.Pamp.1988), which imposes a compensating tax for the privilege of using property in New Mexico under certain circumstances. For the purposes of Section 7–9–7, "'use' or 'using' includes use, consumption or storage other than storage for subsequent sale in the ordinary course of business or for use solely outside this state[.]" NMSA 1978, § 7–9–3(L) (Repl.Pamp.1988).

Phillips concedes "using" the catalogs shipped to and used in its stores, within the meaning of the statute. However, Phillips contends it did not use the remaining catalogs or inserts because it never had physical possession of those printed materials. Phillips offers no New Mexico authority for the proposition that "use" requires actual physical possession and control of the property. Further, the cases Phillips relies on are distinguishable because in those cases, the in-state retailer had the advertising material shipped directly from the out-of-state seller or printer to the in-state recipient, and those materials were never in possession, in the taxing state, of a third party having a contractual relationship with the retailer. *See District of Columbia v. W. Bell & Co.*, 420 A.2d 1208 (D.C.App.1980); *Bennett Bros., Inc. v. State Tax Comm'n*, 62 A.D.2d 614, 405 N.Y.S.2d 803 (1978); *Modern Merchandising, Inc. v. Department of Revenue*, 397 N.W.2d 470 (S.D. 1986).

Phillips had a contractual relationship with the Albuquerque mailing service used to address and mail the catalogs to New Mexico residents. Additionally, Phillips

had a contractual relationship with the New Mexico newspapers through which it directed the manner and timing for the distribution of its newspaper inserts to New Mexico residents. Thus, Phillips exercised control over the catalogs and inserts through its contractual relationship with the mailing service and newspapers in New Mexico. By exercising control over its distribution contractors in New Mexico, Phillips has used the advertising materials distributed in the state within the meaning of Section 7–9–7. *See K Mart Corp. v. Idaho State Tax Comm'n,* 111 Idaho 719, 727 P.2d 1147 (1986), *appeal dismissed,* 480 U.S. 942, 107 S.Ct. 1597, 94 L.Ed.2d 784 (1987); *Deere & Co. v. Allphin,* 49 Ill. App.3d 164, 7 Ill.Dec. 130, 364 N.E.2d 117 (1977); *Wisconsin Dep't of Revenue v. J.C. Penney Co.,* 108 Wis.2d 662, 323 N.W.2d 168 (Ct.App.1982).

2. Whether purchase of the newspaper inserts would have been subject to gross receipts tax had it occurred in New Mexico.

■ Phillips argues that the newspaper inserts were not acquired in transactions that, had they occurred in New Mexico, would have been subject to gross receipts tax because of the deductions allowed by NMSA 1978, Sections 7–9–63 and 7–9–64 (Repl.Pamp.1988). Phillips concludes it is not then subject to compensating tax under Section 7–9–7(A)(2). Sections 7–9–63 and 7–9–64 allow deductions from gross receipts for receipts from publication or sale of newspapers. Thus, if the inserts Phillips purchased from the coordinators constitute newspapers, the imposition of compensating tax was improper.

While no New Mexico case defines "newspaper," G.R. Regulation 64:1 provides:

As used in Section 7–9–63 and 7–9–64, the term "newspaper" is limited to those publications which are commonly understood to be newspapers and which are printed and distributed periodically at daily, weekly, or other short intervals for the dissemination of news of a general

character and of a general interest. The term does not include handbills, circulars, flyers or the like, unless printed and distributed as part of a publication which otherwise constitutes a newspaper within the meaning of this paragraph. Neither does the term include any publication which is issued to supply information on certain subjects of interest to particular groups, unless such publication otherwise qualifies as a newspaper within the meaning of this paragraph. Advertising is not considered to be news of a general character and of a general interest.

The last sentence of the regulation is the clearest indication that the inserts do not constitute newspapers. The inserts Phillips purchased are advertising, which the last sentence of the regulation states is not considered news of a general character and interest.

The exemptions on which Phillips relies refer to "[r]eceipts from publishing newspapers or magazines, except from selling advertising space" and "[r]eceipts from selling newspapers, except from selling advertising space." *See* §§ 7–9–63, 7–9–64. The coordinators sold inserts to Phillips. At the moment the inserts were sold to Phillips, they were circulars or flyers, which the regulation specifically excludes from the definition of a newspaper. The coordinators did not sell newspapers within the meaning of Section 7–9–64.

Although G.R. Regulation 64:1 provides that "[t]he term [newspaper] does not include handbills, circulars, flyers or the like, unless printed and distributed as part of a publication which otherwise constitutes a newspaper within the meaning of this paragraph[,]" this portion of the regulation does not mean that Phillips' inserts are newspapers subject to the deductions provided for in Sections 7–9–63 and 7–9–64. We agree with the suggestion of the state that whatever the language "unless printed and distributed as part of a publication which otherwise constitutes a newspaper ..." means, that language was not intended to exempt Phillips' use of the inserts

from imposition of the compensating tax. For these purposes, the focal point is the transaction in which Phillips acquired the insert. *See* § 7–9–7(A)(2).

The focal transaction then is the sale of the inserts to Phillips by the coordinators. The only material the coordinators sold to Phillips was the inserts. The advertising was not inserted into a newspaper by the coordinators. This was accomplished by Phillips itself under its contractual relationship with the newspapers. At the moment of the relevant transaction, when the newspaper inserts were sold to Phillips, the inserts were circulars or flyers which the first portion of the sentence excludes from the definition of newspaper. Therefore, the deductions found at Sections 7–9–63 and 7–9–64 cannot operate to shield Phillips from the imposition of compensating tax under the facts of this case.

3. Whether the correct tax base for the compensating tax is 77% of the amount the coordinator billed Phillips.

■ The parties stipulated that in Phillips' transactions with Paul Schultz Catalogues, 77% of the amount charged was for printing and manufacturing the catalogs, mailing pieces, and inserts, and 23% was for services. Phillips argues that since compensating tax is not assessed on services rendered outside of New Mexico, the correct tax base should not include the 23% specified as charges for services and that the correct tax base is 77% of the total charges, which reflects the amount charged for printing and manufacturing the inserts and catalogs. Phillips cites no authority supporting a breakout of the value of services which are incidental to and incorporated in the total value of the tangible personal property Phillips purchased.

New Mexico has adopted the predominant ingredient test in determining whether an activity is a service or the sale of tangible property. *E G & G, Inc. v. Director, Revenue Div. Taxation & Revenue*

*Dep't*, 94 N.M. 143, 607 P.2d 1161 (Ct.App. 1979). In *E G & G*, the court compared the "relative inputs of services and tangible property." *Id.* at 146, 607 P.2d at 1164. Since the cost of tangible property was a small percentage of the contract price, the court concluded the purchaser bought services.

The department argues that the services provided by the coordinators were incidental to the sale of tangible personal property. We agree. There were no services provided that were not related to the ultimate purpose of creating catalogs or inserts that were sold to retailers. Phillips was billed on a per-copy basis by the coordinators, and there was no breakout in the billing for services incorporated in producing the advertising material. On these facts, we find the coordinators were engaged in activities predominantly involving the sale of tangible personal property in the form of catalogs and newspaper inserts, rather than the sale of services. Accordingly, the department properly identified the appropriate tax base as the full amount the coordinators charged Phillips.

4. Whether assessment of a negligence penalty was proper.

■ The department's assessment included a penalty under NMSA 1978, Section 7–1–69(A) (Repl.Pamp.1988), which imposes a civil penalty of 10% of the assessed tax when the failure to pay a tax is "due to negligence or disregard of rules and regulations[.]" Phillips argues it was not negligent or in disregard of the department's rules and regulations because it had a good faith doubt as to whether it was subject to compensating tax. This court recently discussed the concept of negligence in Section 7–1–69(A). *See El Centro Villa Nursing Center v. Taxation & Revenue Dep't*, 108 N.M. 795, 779 P.2d 982 (Ct.App.1989). There we noted that negligence is defined by regulation [1] and that definition includes inadvertent error. *Id.*

---

1. T.A. Regulation 69:3—Negligence
    Taxpayer "negligence" under Subsection A of
    Section 7–1–69 means:

    a. Failure to exercise that degree of ordinary
    business care and prudence which reasonable

The stipulated facts in this case lend no support to Phillips' contention that it maintained a good faith doubt concerning the taxability of its transactions with the coordinators. The record does not indicate whether Phillips was even aware of any of the controversy concerning this tax prior to receipt of the assessment. We find nothing in the record reflecting Phillips' failure to pay the compensating tax was the result of " 'diligent protest' * * * based on informed consultation and advice." *C & D Trailer Sales v. Taxation & Revenue Dep't*, 93 N.M. 697, 699–700, 604 P.2d 835, 837–38 (Ct.App.1979). Phillips failed to present any competent evidence negating the inference that it was negligent in failing to pay the compensating tax assessed. *Id.* Accordingly, assessment of a negligence penalty pursuant to Section 7-1-69(A) was proper.

taxpayers would exercise under like circumstances:

   b. Inaction by taxpayers where action is required;

   c. Inadvertence, indifference, thoughtlessness, carelessness, erroneous belief or inattention.

## CONCLUSION

In conclusion, we hold that compensating tax on the value of catalogs and newspaper inserts purchased by Phillips and a negligence penalty were properly assessed. We therefore affirm the decision and order of the department.

IT IS SO ORDERED.

MINZNER and APODACA, JJ., concur.

"Negligence" is equated with the federal standard of "lack of reasonable cause" as set forth in 26 U.S.C. § 6651(a). *Gathings v. Bureau of Revenue*, 87 N.M. 334, 533 P.2d 107 (Ct.App.1975).