878 P.2d 330

**ARCO MATERIALS, INC.,**
Petitioner–Appellant,

v.

**STATE of New Mexico, TAXATION AND REVENUE DEPARTMENT,**
Respondent–Appellee.

**No. 14729.**

Court of Appeals of New Mexico.

April 27, 1994.

Certiorari Granted June 27, 1994.

Sharon P. Gross, Kendall O. Schlenker, Alice Tomlinson Lorenz, Miller, Stratvert, Torgerson & Schlenker, P.A., Albuquerque, for petitioner-appellant.

Tom Udall, Atty. Gen., Bruce J. Fort, Sp. Asst. Atty. Gen., Taxation and Revenue Dept., Santa Fe, for respondent-appellee.

## OPINION

APODACA, Judge.

Arco Materials, Inc., (Taxpayer) appeals the decision of the New Mexico Taxation and Revenue Department (Department) disallowing certain deductions and assessing penalties under the Gross Receipts and Compensating Tax Act, NMSA 1978, §§ 7-9-1 to -82 (Repl.Pamp.1990). The issues on appeal involve whether gross receipts tax for sales of construction materials to the Bureau of Indian Affairs (BIA) and for sales after July 1, 1989, to various state municipalities and counties was properly assessed by the Department. Taxpayer also challenges the assessment of penalties for the failure to pay the taxes. We reverse the assessment of taxes and associated penalties on the sales of construction materials to the BIA. We affirm the Department's assessment of taxes and associated penalties on the sales of construction materials to state municipalities and counties.

## DISCUSSION

■■ Any assessment of taxes by the Department is presumed to be correct and, in protesting the assessment of taxes, Taxpayer has the burden of proving the deductions were proper. *See* NMSA 1978, §§ 7-1-17(C) & 7-9-5 (Repl.Pamp.1990); *Wing Pawn Shop v. Taxation & Revenue Dep't,*

111 N.M. 735, 740–41, 809 P.2d 649, 654–55 (Ct.App.1991); *El Centro Villa Nursing Ctr. v. Taxation & Revenue Dep't*, 108 N.M. 795, 796, 779 P.2d 982, 983 (Ct.App.1989). In reviewing the disallowance of the deductions and the assessment of penalties, this Court will reverse the Department's decision only if it is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, or not supported by substantial evidence. *See In re Mountain Bell*, 109 N.M. 504, 505, 787 P.2d 423, 424 (1990). When reviewing for sufficiency of the evidence, we look to the whole record and review the evidence in the light most favorable to the agency's findings. *Wing Pawn Shop*, 111 N.M. at 739, 809 P.2d at 653.

1. *Sale of Materials to BIA and Associated Penalties.*

██ This Court has held that the State may not impose gross receipts tax on construction built entirely on Indian reservations funded through the BIA. *Blaze Constr. Co. v. Taxation & Revenue Dep't*, 117 N.M. 362, 871 P.2d 1368 (Ct.App.), *cert. granted*, (Nov. 1, 1993). The Department argues that *Blaze* was wrongly decided. Nonetheless, even though certiorari was granted in *Blaze*, it is controlling and we decline to reconsider our decision in that case. Because the Department's decision is contrary to our holding in *Blaze*, we reverse the disallowance of the deductions for sales of construction materials to the BIA. Because the tax was not properly assessed, we also reverse the assessment of penalties based on the failure to pay taxes on these sales. *See* NMSA 1978, § 7–1–69(A) (Repl.Pamp.1990).

2. *Sale of Materials to Municipalities and Counties and Associated Penalties.*

██ Taxpayer challenges the disallowance of the deductions for construction materials sold to state municipalities and counties on several grounds. The basis for these deductions was NMSA 1978, Section 7–9–54(A) (Supp.1989), which provides that receipts for sales of tangible personal property to governmental entities can be deducted. Section 7–9–54 was amended effective July 1, 1989, to state that the deduction did not apply to "receipts from selling tangible personal property that will become an ingredient or component part of a construction project. . . ." Section 7–9–54(C)(3).

Taxpayer contends the amendment did not disallow deductions for sales of tangible personal property used for "repairs or maintenance" or "construction," but disallowed only sales of materials used as part of a "construction project." Relying on the Department's regulation defining "construction project," *see* Taxation & Revenue Dep't Reg. GR 51:16 (1990), Taxpayer concludes it is entitled to the deductions because none of the materials it sold was used as part of a construction project. Contrary to Taxpayer's argument that Regulation GR 51:16 establishes a definite test for determining whether an endeavor is a "construction project," this regulation merely states *nonexclusive guidelines* for determining whether materials constitute a component part of a construction project. Additionally, because this regulation does not purport to define exclusively what materials are part of a construction project, we are not persuaded that it controls what materials should be taxed under Section 7–9–54. For these reasons, it is not determinative of the issue of whether the materials sold by Taxpayer were used in construction projects.

Even if we accepted Taxpayer's argument that its sales of construction materials to the governmental entities did not fit within the guidelines of Regulation GR 51:16, we are not persuaded that this regulation placed those transactions outside the scope of the amendment to Section 7–9–54(C). In rejecting Taxpayer's argument, we rely primarily on the legislative definition of "construction" contained in NMSA 1978, Section 7–9–3(C) (Repl.Pamp.1993). This definition includes, among other things, "building, altering, repairing or demolishing" any road, highway, bridge, parking area, or related project; building or other structure; airport; park, trail, athletic field, golf course, or similar facility; sewage or water treatment facility; pipeline; transmission line; storage tank; or similar work. *Id.* It also includes leveling or clearing land, excavating earth, and similar work. *Id.* Given this broad definition of

"construction," which encompasses a wide variety of construction activities, including repairs and projects, we are not persuaded by Taxpayer's argument that the legislature intended to distinguish "construction project" from construction activities generally. This broad definition was in effect when Section 7-9-54 was amended in 1989. *See* § 7-9-3(C) (Supp.1989).

Taxpayer also argues that the Department should be bound by what Taxpayer asserts is a longstanding distinction between repairs and maintenance activities and construction projects. Even if we were to assume that the Department had made such a distinction, we are not persuaded this distinction should override the legislative definition that clearly incorporates repairs and, by implication, maintenance in the definition of "construction." Therefore, we determine that the amendment to Section 7-9-54 was intended to make sales of construction materials to governmental entities taxable when the materials are to be incorporated into construction projects and, additionally, that construction projects include the wide variety of activities listed in Section 7-9-3(C).

■ Taxpayer next contends that it was entitled to rely on the nontaxable transaction certificates (NTTCs) issued by the governmental entities as conclusive proof that it was entitled to the deductions. *See* NMSA 1978, § 7-9-43(A) (Repl.Pamp.1990). The NTTCs had been provided to Taxpayer before Section 7-9-54 was amended and represented that the governmental entities were required to employ the tangible personal property purchased from Taxpayer in the conduct of their regular government functions. The specific issue before this Court is whether Taxpayer was entitled to continue to rely on the provided NTTCs despite the change in the law that rendered the NTTCs invalid for certain types of transactions.

Various cases have considered the circumstances under which a taxpayer's timely, good faith acceptance of an NTTC protected it from potential tax liability. *See Continental Inn of Albuquerque v. New Mexico Taxation & Revenue Dep't,* 113 N.M. 588, 591–92, 829 P.2d 946, 949–50 (Ct.App.1992) (subcontractors accepted NTTCs in good faith despite contract providing that subcontractors were liable for payment of all sales, consumer, use, and similar taxes, and were entitled to rely on them); *Proficient Food Co. v. New Mexico Taxation & Rev. Dep't,* 107 N.M. 392, 397, 758 P.2d 806, 811 (Ct.App.) (affirming Department's refusal to honor NTTC not in official form), *cert. denied,* 107 N.M. 308, 756 P.2d 1203 (1988); *Gas Co. v. O'Cheskey,* 94 N.M. 630, 632, 614 P.2d 547, 549 (Ct.App. 1980) (issuance of NTTC does not transform an otherwise taxable transaction into a nontaxable one); *McKinley Ambulance Serv. v. Bureau of Revenue,* 92 N.M. 599, 601, 592 P.2d 515, 517 (Ct.App.1979) (conclusive evidence provision only applies if the certificate covers the receipts in question); *Leaco Rural Tel. Coop., Inc. v. Bureau of Revenue,* 86 N.M. 629, 632–33, 526 P.2d 426, 429–30 (Ct. App.1974) (although receipts were not properly deductible in the first instance because the telephone communication was not the sale of tangible personal property, taxpayer was allowed the deduction based on its timely acceptance of NTTCs). None of these cases, however, decided the exact issue presented in this case, whether a taxpayer can escape tax liability for transactions based on NTTCs issued before a change in the law rendered the NTTCs invalid for those transactions.

We are not persuaded by Taxpayer's argument that a taxpayer has no continuing duty to assess the validity of deductions made in reliance on NTTCs issued. We interpret Section 7-9-43(A) as protecting a taxpayer when the purchaser who provided the NTTC has failed to live up to the promise that actual transaction was nontaxable. *See Leaco Rural Tel. Coop., Inc.,* 86 N.M. at 632–33, 526 P.2d at 429–30. As Taxpayer notes, it would create a tremendous burden to require a taxpayer to monitor the purchaser's activities. However, we do not interpret the statute as protecting taxpayers from changes in the law that render formerly nontaxable transactions taxable. *See Gas Co.,* 94 N.M. at 632, 614 P.2d at 549.

A taxpayer has an affirmative duty to keep informed about changes in the tax law that might affect its liability. The Department has promulgated the following regulation:

Acceptance of nontaxable transaction certificates (NTTCs) in good faith that the property or service sold thereunder will be employed by the purchaser in a nontaxable manner is determined at the time the certificates are initially accepted. *The taxpayer claiming the protection of a certificate continues to be responsible that the goods delivered thereafter are of the type covered by the certificate.*

Taxation & Revenue Dep't Reg. GR 43:9 (1990) (emphasis added). This regulation clearly states that the taxpayer has a continuing duty to ascertain that the NTTCs continue to cover the types of goods sold. After the 1989 amendment to Section 7–9–54, deductions for receipts derived from sales of construction materials to governmental entities were no longer valid and the NTTCs could no longer be used to justify deductions for this type of transaction, regardless of what the NTTCs represented on their face.

We are also unpersuaded by Taxpayer's contention that the Department misled it to believe the receipts from these transactions continued to be deductible. The Department issued a CRS–1 Filer's Kit that, on the second page under the heading "Tax Changes Enacted by the 1989 Session of the New Mexico Legislature," stated:

DEDUCTION: SALE OF CONSTRUCTION MATERIALS TO GOVERNMENTAL AGENCIES

Section 7–9–54 NMSA 1978

*The deduction for receipts from the sale of construction materials to governmental entities is discontinued,* regardless of whether the materials are separately stated under a construction contract.

Chapter 115. Effective Date: July, 1989. (Emphasis added.)

The kit reiterates this exception to the deduction in its general explanation of exemptions and deductions. We find nothing in the kit that could have misled Taxpayer concerning the discontinuance of this deduction. Under these circumstances, Taxpayer could not reasonably have continued to rely on the NTTCs issued before Section 7–9–54 was amended. We thus determine that they were not conclusive proof that receipts from these transactions were deductible.

■ Taxpayer also contends that the Department's auditor made statements leading Taxpayer to believe the receipts were deductible. Although the testimony on this question appears to be conflicting, even if the auditor made misleading statements, these statements were made only after Taxpayer had claimed the deductions. Consequently, we conclude that Taxpayer could not have relied on them as a basis for taking the deductions.

■ Under Section 7–1–69(A), civil penalties may be assessed against a taxpayer "[i]n the case of failure, due to negligence or disregard of rules and regulations, but without intent to defraud, to pay when due any amount of tax required to be paid...." The Department has defined negligence to include the "failure to exercise that degree of ordinary business care and prudence [that] reasonable taxpayers would exercise under like circumstances; ... inaction by taxpayers where action is required; ... [and] inadvertence, indifference, thoughtlessness, carelessness, erroneous belief or inattention." Taxation & Revenue Dep't Reg. TA 69:3 (1990). New Mexico case law is clear that penalties may properly be assessed even when the failure to pay is based on inadvertent error or unintentional failure to pay the tax due. *See GTE Southwest, Inc. v. Taxation & Revenue Dep't,* 113 N.M. 610, 626–27, 830 P.2d 162, 178–79 (Ct.App.), *cert. denied,* 113 N.M. 605, 830 P.2d 157 (1992); *Phillips Mercantile Co. v. New Mexico Taxation & Revenue Dep't,* 109 N.M. 487, 490–91, 786 P.2d 1221, 1224–25 (Ct.App.1990); *El Centro Villa Nursing Ctr.,* 108 N.M. at 797–98, 779 P.2d at 984–85; *cf. Stohr v. New Mexico Bureau of Revenue,* 90 N.M. 43, 47, 559 P.2d 420, 424 (Ct.App.1976) (diligent protest by taxpayer and reasonable doubt as to the correctness of the taxes negated the possibility of negligence), *cert. denied,* 90 N.M. 254, 561 P.2d 1347 (1977).

■ In this appeal, there was evidence that Taxpayer received a copy of the CRS–1 Filer's Kit, which clearly stated the change in the law, and that Taxpayer's office manager was aware she was required to keep current with any changes in the tax law. There was

also evidence that the office manager believed the audits performed by an accounting firm would uncover potential tax problems, although there did not appear to have been any evidence concerning discussions with the firm's auditors about these issues. Taxpayer's general manager and secretary-treasurer testified that he believed materials sold for repair and maintenance were not taxable. We believe that his testimony was substantial evidence that Taxpayer's failure to pay the gross receipts tax due was based on its erroneous beliefs, inattention, inaction where action would be reasonably required, or a failure to exercise the degree of ordinary business care that similarly situated businesses would exercise. *See* Reg. TA 69:3; *El Centro Villa Nursing Ctr.*, 108 N.M. at 798, 779 P.2d at 985.

## CONCLUSION

We reverse the Department's disallowance of deductions and associated penalties for receipts from sales of materials to the BIA. We affirm the disallowance of deductions and associated penalties for receipts from sales of construction materials to state municipalities and counties. The parties shall bear their own costs on appeal.

IT IS SO ORDERED.

FLORES, J., concurs.

BLACK, J., specially concurring.

BLACK, Judge (specially concurring).

While I concur in the entire opinion which we file today, I have some reservations about the decision upon which Point 1 is premised, *Blaze Construction Co. v. Taxation & Revenue Department*, 117 N.M. 362, 871 P.2d 1368 (Ct.App.) (No. 12,120), *cert. granted*, (Nov. 1, 1993). In particular, I believe that *Blaze* may not have adequately considered the holding of our Supreme Court in *Tiffany Construction Co. v. Bureau of Revenue*, 96 N.M. 296, 629 P.2d 1225 (1981). It may be that more recent United States Supreme Court cases, such as *Ramah Navajo School Board, Inc. v. Bureau of Revenue*, 458 U.S. 832, 102 S.Ct. 3394, 73 L.Ed.2d 1174 (1982), require a reexamination of *Tiffany*, but until our Supreme Court engages in such a reex-

amination, we must follow such recent New Mexico precedent. *See State v. Wilson*, 116 N.M. 793, 795, 867 P.2d 1175, 1177 (1994) (court bound by recent precedent of our Supreme Court).

Notwithstanding my concerns about whether the issue was correctly decided in *Blaze*, however, I believe it is more important for this Court to follow its own precedent than to allow the rights of the parties to be governed by which panel of judges is assigned to the case. *See generally* Taylor Mattis, *Precedential Value of Decisions of the Court of Appeals of the State of New Mexico*, 22 N.M.L.Rev. 535, 537 (1992). I therefore concur.