526 P.2d 426

**LEACO RURAL TELEPHONE COOPERA-
TIVE, INC., Appellant,**

v.

**BUREAU OF REVENUE of the State of
New Mexico, Appellee.**

**No. 1352.**

Court of Appeals of New Mexico.

July 24, 1974.

Rehearing Granted Aug. 13, 1974.

Jerry L. Williams, Heidel, Samberson, Gallini & Williams, Lovington, for appellant.

David L. Norvell, Atty. Gen., Keith A. Maxwell, Vernon O. Henning, Bureau of Revenue, Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION

WOOD, Chief Judge.

After an audit, the Bureau of Revenue issued its assessment for gross receipts tax, penalty and interest for the period January 1, 1969, through February 29, 1972. Leaco (Leaco Rural Telephone Cooperative, Inc.) protested. After a hearing which resulted in a partial abatement, the protest was denied. Leaco appeals the decision of the Commissioner of Revenue directly to this Court. Four issues are presented. The third and fourth issues—procedure at the hearing and asserted vagueness of the assessment after the abatement—need not be answered because the first two issues are dispositive. The two issues are: (1) whether Leaco was selling tangible personal property and (2) the effect of NTTCs (nontaxable transaction certificates) in this case.

*Whether Leaco was selling tangible personal property.*

▄ Leaco is in the telephone business. In reporting receipts from that business for gross receipts tax purposes it deducted receipts from certain government organizations and organizations that had been granted an exemption from the federal income tax. Sections 72–16A–14.9 and 72–16A–14.15, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1973) define the organizations involved in this case. However, those sections authorize the deduction only if there was a sale of tangible personal property. The issue is whether Leaco sold tangible personal property to those organizations.

Leaco provides telephone communication for its customers. Such communication requires electricity. Section 72–16A–3(I), N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp. 1973) defines tangible personal property to include electricity. Leaco would equate the telephone communication it provides with electricity and on that basis obtain the deduction. It asserts that otherwise it is denied equal protection of law because there is no reasonable basis for differentiating between electricity and the telephone communication it provides.

We are not concerned in this case with interstate telephone calls nor with physical items sold, such as "night dials." Nor are we concerned with the charge for installing a telephone. The deductions disallowed by the Commissioner concern receipts from intrastate toll charges and "local" telephone calls.

There is evidence that Leaco maintains two "exchanges" in its business. These exchanges are an arrangement which enables users of the telephone to converse with one another. See Western Union Tel. Co. v. American Bell Tel. Co., 105 F. 684 (Cir.Ct.D.Mass.1900), rev'd on other grounds, 125 F. 342 (1st Cir. 1903). There is evidence that Leaco provided a private telephone line to a federal agency at Caprock. The charge for this line was a set fee regardless of how often the line was used. There is evidence that toll calls are charged on the basis of the length of time involved. There is evidence that local calls have "a five-minute disconnect," that is,

after five minutes the telephone is disconnected and the caller must dial again.

The foregoing is substantial evidence that more is involved in the telephone business than the the sale of electricity. The foregoing evidence supports the Commissioner's decision that the receipts for which deductions were claimed were not receipts from selling tangible personal property. Although there is conflicting evidence, our review considers the evidence in a light most favorable to the Commissioner's decision. Westland Corporation v. Commissioner of Revenue, 84 N.M. 327, 503 P.2d 151 (Ct.App.1972).

▮ With evidence showing more is involved in a telephone business than selling electricity, there is a reasonable basis for differentiating between electricity and telephone communication. The Commissioner's decision did not deprive Leaco of equal protection of law. See Michael J. Maloof & Co. v. Bureau of Revenue, 80 N.M. 485, 458 P.2d 89 (1969).

Leaco relies on Evco v. Jones, 81 N.M. 724, 472 P.2d 987 (Ct.App.1970) where camera-ready copies of materials were held to be tangible personal property. The reason was that the finished form of the materials was essential to the use for which the materials were intended and, thus, the camera-ready copies were not prepared as an incident to the performance of services. The situation in this case is not comparable.

Leaco asserts that a telephone business is to be equated with electricity as a matter of law and supports this contention with cases indicating little distinction between electricity and telephone communication. With evidence that more is involved in a telephone business than electricity, we cannot make the requested equation as a matter of law. The evidence supports the view that a telephone company "furnishes to the patron facilities for carrying on a conversation at long distance." Southern Telephone Co. v. King, 103 Ark. 160, 146 S.W. 489, 39 L.R.A.,N.S., 402 (1912). Rivera v. City of Fresno, 6 Cal.3d 132, 98

Cal.Rptr. 281, 490 P.2d 793 (1971) states: "Telephone service is plainly not tangible personal property." A telephone company "renders a service." Dun & Bradstreet v. City of New York, 276 N.Y. 198, 11 N.E. 2d 728 (1937). See La Follette v. Albuquerque Gas & Electric Co.'s Rates, 37 N. M. 57, 17 P.2d 944 (1932); compare § 69–10–2(B) & (C), N.M.S.A.1953 (Repl.Vol. 10, pt. 1, Supp.1973).

The telephone business is not to be equated with the sale of electricity as a matter of law. The inferences from the evidence support the decision that the telephone communication involved was not a sale of tangible personal property. We affirm the Commissioner's decision on this point.

*Effect of NTTCs in this case.*

Leaco was supplied with a NTTC for each transaction for which it claimed a deduction. Section 72–16A–13(A), N.M.S. A.1953 (Repl.Vol. 10, pt. 2, Supp.1973) provides for the NTTCs involved in this case. Section 72–16A–13(A), supra, provides that the certificate is to be executed by the buyer and delivered to the seller. This was done. It provides the NTTC is to contain the information and be in a form prescribed by the Bureau. Leaco offered the NTTCs as evidence; however, the Bureau agreed they need not be introduced. Section 72–16A–13(A), supra, provides:

"   .   .   .   When the seller or lessor accepts a nontaxable transaction certificate within the *required time* and in *good faith* that the buyer or lessee will employ the property or service transferred in a nontaxable manner, the *properly executed* nontaxable transaction certificate *shall be conclusive evidence, and the only material evidence,* that the proceeds from the transaction are deductible from the seller's or lessor's gross receipts." [Emphasis added]

No contention is made that Leaco's acceptance of the NTTCs was untimely. At the hearing before the Commissioner, the Bureau contended Leaco did not accept the

NTTCs in good faith. It renews that argument in this Court. The Bureau concedes the evidence shows Leaco did not accept the NTCCs in *bad faith*. It contends this evidence does not support an inference of *good faith*. Its position is that the taxpayer must show affirmative action, such as an inquiry into the use intended by the buyer, before good faith is shown.

The answer is that. neither good faith nor bad faith is an issue in this appeal. The Commissioner made no finding concerning good faith. The Commissioner did not reject the applicability of the NTTCs on the basis that Leaco did not accept them in good faith.

■ Section 72–16A–13(A), supra, states who "shall execute" NTTCs. The above quoted statutory provision requires that the NTTCs shall be "properly executed." These words are used in the sense of completing—filling out and signing—the NTTCs. See "execute" and "executed" in Black's Law Dictionary (4th Ed. 1951) and Webster's Third New International Dictionary (1966). The Commissioner did not find, nor was any issue raised, as to whether the NTTCs had been properly executed.

■ There are three requirements to be met before an NTTC becomes conclusive evidence that proceeds of a transaction are deductible. The requirements are timeliness of acceptance of the NTTC, good faith acceptance of the NTTC and a properly executed NTTC. The Commissioner did not deny effect to Leaco's NTTCs on any of these grounds.

The Commissioner's ruling goes beyond the statutory provision. He ruled that Leaco's claimed deductions were not to be allowed, notwithstanding § 72–16A–13, supra, "because the nontaxable transaction certificates in taxpayer's possession were improperly issued."

Section 72–16A–14.9, supra, does not mention NTTCs, but the Bureau concedes, in its brief, that it "permits" use of NTTCs in transactions covered by this section. Section 72–16A–14.15, supra, expressly refers to NTTCs.

■ The Bureau's position is that Leaco was not entitled to deductions under §§ 72–16A–14.9 and 14.15, supra, and absent such entitlement NTTCs could not be properly issued for claimed deductions under those two sections. On the basis that the NTTCs were improperly issued, the Bureau asserts no effect should be given to the NTTCs, notwithstanding the provisions of § 72–16A–13, supra.

A consequence of the Bureau's position would be that if a taxpayer-seller held NTTCs in compliance with § 72–16A–13, supra, it could nevertheless be held liable for the gross receipts tax because the person issuing the NTTCs and delivering the NTTCs to the taxpayer did so improperly.

That is not what the statute says. The deduction based on NTTCs held in compliance with § 72–16A–13(A), supra, is not conditioned upon proper issuance of the NTTC. Whether the NTTC has been properly issued is a matter between the Bureau and the one who issues the NTTC. Section 72–16A–13(A), supra, by explicit wording, protects a person holding NTTCs in compliance with its provisions. It states that if the taxpayer accepted an NTTC timely, in good faith and properly executed, the NTTC is "conclusive evidence, and the only material evidence," that the proceeds from the transaction are deductible. The Bureau's contention disregards this explicit statutory language.

The Commissioner denied effect to Leaco's NTTCs on a basis that is contrary to the statutory language. He was without authority to do so. Rainbo Baking Co. of El Paso v. Commissioner of Rev., 84 N.M. 303, 502 P.2d 406 (Ct.App.1972).

Receipts from the transactions involved in this case (telephone service to schools, churches, police departments, fire departments, etc.) were not properly deductible in the first instance because the transactions were not sales of tangible personal property. However, when Leaco accepted the

NTTCs in compliance with § 72–16A–13(A), supra (and there is no finding that it did not), the deductions authorized by § 72–16A–13(A), supra, applied and protected Leaco from tax liability on receipts from those transactions.

We reverse the Commissioner's decision refusing to give effect to the NTTCs. The cause is remanded to the Commissioner for further proceedings consistent with this opinion.

It is so ordered.

HERNANDEZ, and LOPEZ, JJ., concur.

## ON MOTION FOR REHEARING

WOOD, Chief Judge.

■ Our opinion states:

"We reverse the Commissioner's decision refusing to give effect to the NTTCs. The cause is remanded to the Commissioner for further proceedings consistent with this opinion."

Leaco's motion for rehearing alleges the Commissioner now proposes to conduct a new hearing in this case. This allegation is supported by a copy of a letter in which the Commissioner schedules "a formal hearing to determine the issue of good faith acceptance of nontaxable transaction certificates." Leaco's motion asserts that this Court did not authorize further hearings. We agree.

Section 72–13–41, N.M.S.A.1953 (Repl-Vol. 10, pt. 2, Supp.1973) states that when the jurisdiction of the Court of Appeals is invoked, "a final decision of that court or of any higher court which reviews the matter and from which decision no appeal or review is successfully taken, is conclusive as regards the liability or nonliability of any person for payment of any tax."

■ The language of § 72–13–41, supra, does not contemplate that having imposed tax liability under a theory held to be erroneous the Commissioner can then proceed anew against a taxpayer under another theory.

Until our decision is set aside by a higher court, our decision is conclusive as to Leaco's tax liability. Our decision did not authorize further hearings. The "further proceedings" contemplated was for the Commissioner to set aside his decision imposing tax liability upon Leaco.

The motion for rehearing is granted. The Commissioner is directed to vacate his previous decision, to enter a new decision upholding Leaco's protest of nonliability for the taxes involved and to comply with § 72–13–41, supra, by giving conclusive effect to our decision. This means that the new hearing scheduled by the Commissioner has no legal effect on Leaco's tax liability.

Leaco is awarded its costs in the appeal and its costs, if any, incurred in connection with the motion for rehearing.

HERNANDEZ and LOPEZ, JJ., concur.