758 P.2d 806

**PROFICIENT FOOD COMPANY, Appellant,**

v.

**The NEW MEXICO TAXATION AND REVENUE DEPARTMENT, Appellee.**

**No. 10028.**

Court of Appeals of New Mexico.

May 3, 1988.

Hal Stratton, Atty. Gen., D. Sandi Gilley, Carolyn A. Wolf, Sp. Ass't. Attys. Gen., Taxation & Revenue Depart., Santa Fe, for appellee.

Mary E. McDonald, Sutin, Thayer & Browne, P.C., Santa Fe, for appellant.

## OPINION

DONNELLY, Chief Judge.

Proficient Food Company (PFC) appeals the administrative decision and order of the Taxation and Revenue Department (Department) denying its protest to an assessment of gross receipts tax, assessing interest and penalties upon it for food and supplies sold by PFC to restaurants in New Mexico. PFC raises three issues on appeal: (1) whether the New Mexico gross receipts tax levied against it violates the commerce clause of the United States Constitution, article I, section 8, clause 3; (2) whether the Blanket Exemption Certificate obtained by PFC substantially complies with the requirements of NMSA 1978, Section 7-9-43 (Repl.1986) of the Gross Receipts and Compensating Tax Act, entitling it to deduct the receipts from the sales of food to Denny's; and (3) whether the proper tax to be levied against PFC is the compensating tax, not the gross receipts tax. We affirm.

The parties stipulated to the material facts. On December 6, 1985, the Department issued a notice of assessment against PFC for payment of state gross receipts tax, and accrued penalty and interest in the total amount of $262,274.21. PFC protested the assessment and following a hearing, an administrative hearing officer upheld the validity of the assessment.

PFC is a California corporation, registered with the Department for tax purposes. PFC owns and operates a food and restaurant supply business with a warehouse located in Arlington, Texas. During the audit period, PFC sold food and other restaurant supplies to Denny's and Grandy's restaurants for use in New Mexico. The sales arrangement between PFC, Den-ny's and Grandy's was negotiated and administered outside New Mexico. PFC, however, obtained orders for deliveries by telephoning restaurants and taking down the orders over the phone. The ordered goods were delivered by PFC in its own trucks from its warehouse in Texas to the restaurants in New Mexico.

PFC does not maintain an office or other place of business in New Mexico and none of its employees, agents or salesmen reside within the state. PFC's customer service representatives sometimes travel from Texas to New Mexico in order to respond to complaints or other matters on an unscheduled basis. The food and other supplies sold by PFC to New Mexico restaurants are invoiced and paid for by Denny's and Grandy's through their corporate headquarters located outside New Mexico.

During the audit period, records indicated that PFC had deducted the receipts from its sales of food to Denny's and Grandy's, but failed to supply the Department with non-taxable transaction certificates within the sixty days provided for in Section 7-9-43. PFC did, however, obtain a form entitled, "Blanket Exemption Certificate," and submitted it to the Department from Denny's Incorporated.

## I. COMMERCE CLAUSE

The Gross Receipts and Compensating Tax Act, NMSA 1978, Section 7-9-4 to -82 (Repl.1986), provides for the imposition of a gross receipts tax on any person engaging in business in this state based upon the privilege of engaging in business within New Mexico. The Act also raises a presumption that all receipts by persons engaging in business are subject to the gross receipts tax. § 7-9-5. Receipts, however, from transactions in interstate commerce are subject to deduction from gross receipts to the extent that the tax would be unlawful under the United States Constitution. § 7-9-55.

The United States Supreme Court has defined a four prong test to determine whether a state tax violates the commerce clause of the federal constitution. *Com-*

*plete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). Under *Brady* the Court reaffirmed the rule that the commerce clause of the United States Constitution does not preclude a state from imposing a nondiscriminatory, properly apportioned state tax upon foreign corporations performing exclusively interstate business when the tax is related to the corporation's local activities and the state has provided benefits and protections for those activities for which it is justified in seeking a fair and reasonable return.[1] In order to avoid conflict with the commerce clause, the test enunciated in *Brady* requires a showing that: (1) a sufficient nexus exists between the activity being taxed and the taxing state; (2) the tax is fairly apportioned; (3) the tax imposed does not discriminate against interstate commerce; and (4) the tax is fairly related to services provided by the state. On appeal, PFC asserts that the first three prongs of this test have not been met; it does not address the fourth requirement.

In *Tyler Pipe Industries, Inc. v. Washington State Department of Revenue*, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987), the Supreme Court held that there was a sufficient nexus between the state of Washington and the sale of products manufactured outside Washington but sold in Washington, to permit the imposition of a state gross receipts tax upon the corporation. In upholding the gross receipts tax assessed against the corporation's sales, the Court held that the tax was valid despite the fact that Tyler Pipe maintained no office in Washington, had no employees residing within the state and owned no property within the state. Tyler Pipe's solicitation of sales was directed by executives who maintained offices outside Washington and by an independent contractor within Washington.

PFC attempts to distinguish *Tyler Pipe* on the basis that the Court found the independent contractor, as the corporation's agent, acted daily on behalf of the taxpayer and its activities on behalf of Tyler Pipe within Washington were substantial in nature. Although the record herein does not indicate the frequency with which PFC's representatives contact the restaurants in New Mexico, PFC acknowledges that orders for food and other products sold by it are taken directly over the phone from purchasers in New Mexico. Additionally, the record indicates that PFC's employees deliver food and supplies to restaurants within this state and that PFC's representatives have followed a policy of visiting restaurants in New Mexico as needed to respond to complaints or other matters.

■ PFC argues that it is not engaged in the business of selling in New Mexico and that all selling activities are concluded when the order is accepted and the goods identified and placed in transit from its locations in Texas. PFC characterizes its activities in New Mexico as limited to delivery of the goods from its trucks. This characterization, however, is contradicted by the stipulated facts which establish that PFC also sends representatives to the restaurants in New Mexico to respond to complaints and other matters and that its employees directly call the restaurants in New Mexico to take orders. Although PFC challenges the inference that its placement of these calls constitutes a solicitation of sales in New Mexico, from the record before us the hearing officer could properly conclude otherwise from the facts presented. PFC's on-going relationship with Denny's and Grandy's does not obviate the necessity of determining the specific needs of its customers at various times and the placing of specific sales orders in response to calls PFC makes to its customers. Furthermore, the fact that PFC did not have a resident agent or representative within New Mexico does not negate the substantial nexus between its activities in New Mexico and this state. PFC's activities in this state are significantly associated with its ability to establish and maintain a market in New Mexico for sales. *See Tyler*

---

**1.** The *Brady* Court rejected the rule that a state tax on the privilege of doing business was per se unconstitutional when applied to interstate commerce. *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, at 288–289.

*Pipe Indus., Inc. v. Washington Dep't of Revenue.*

PFC has not established that the activities of its representatives who visit the restaurants in New Mexico, the delivery of the goods by its trucks to the restaurants in New Mexico and the calls placed by its employees to the restaurants in New Mexico are not decisive factors in establishing and holding its New Mexico market. *See Norton Co. v. Department of Revenue,* 340 U.S. 534, 71 S.Ct. 377, 95 L.Ed. 517 (1951).

PFC's activities adequately support New Mexico's jurisdiction to impose a gross receipts tax on PFC. *Tyler Pipe Indus., Inc. v. Washington State Dep't of Revenue. See also General Trading Co. v. State Tax Comm'n,* 322 U.S. 335, 64 S.Ct. 1028, 88 L.Ed. 1309 (1944) (tax upheld where out-of-state merchant had traveling sales agents). *Compare EVCO v. Jones,* 409 U.S. 91, 93 S.Ct. 349, 34 L.Ed.2d 325 (1972) (impermissible tax levied on out-of-state sales of reproducible educational materials); *National Bellas Hess, Inc. v. Department of Revenue,* 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967) (impermissible tax levied where seller's only connection with customers in taxing state was by mail or common carrier); *Miller Bros. Co. v. Maryland,* 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744 (1954) (impermissible tax levied where seller accepted no mail or telephone orders; products delivered to customers in Maryland were ordered at Delaware store; no C.O. D.'s accepted).

■ The gross receipts tax assessed against PFC was limited to the receipts from the products sold by it to New Mexico restaurants. The Act defines gross receipts as the "total amount of money * * * received from selling property in New Mexico." NMSA 1978, § 7–9–3(F) (Repl.1986). The Act defines selling as "any transfer of property for consideration." § 7–9–3(B). Although not explicitly stated in the stipulated facts, the hearing officer determined it was reasonable to infer that the products delivered to the restaurants in New Mexico were sold in New Mexico, despite the fact that the invoices were handled by the corporate offices outside the state. *See Pittsburgh & Midway Coal Mining Co. v. Revenue Div., Taxation & Revenue Dep't,* 99 N.M. 545, 660 P.2d 1027 (Ct.App.1983) (sale occurred in New Mexico when title and risk of loss pass to purchaser in New Mexico and tax may be imposed on those sales). We agree. Because the tax was imposed only on the gross receipts of sales to the restaurants operating in New Mexico, it was fairly apportioned to PFC's activities within this state. *See Tyler Pipe Indus., Inc. v. Washington State Dep't of Revenue; Standard Pressed Steel Co. v. Washington Dep't of Revenue,* 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975). The tax imposed by this state also is fairly related to the services provided by New Mexico to PFC.

PFC additionally argues that if New Mexico may validly impose a gross receipts tax on its activities in this state, PFC could be subjected to double or triple taxation. PFC asserts that Texas could subject it to a tax for engaging in business in Texas, with the tax measured by the gross sales from its Texas place of business including those sales to the New Mexico restaurants. California, it contends, could also impose a tax for operating as a corporation in California and measure this tax by PFC's total receipts from all places of business, including Texas and New Mexico. As a general rule a court will not decide theoretical or constitutional questions unless necessary to the disposition of the case. *See In re Bunnell,* 100 N.M. 242, 668 P.2d 1119 (Ct.App.1983). Moreover, PFC's argument overlooks the fact that the Act provides a credit against gross receipts, sales, compensating or similar taxes paid to other states, Section 7–9–79. The cases PFC relies upon for this contention are inapposite to the facts of the present case. *E.g., J.D. Adams Mfg. Co. v. Storen,* 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365 (1938) (Indiana may not impose gross receipts tax for out-of-state sales of goods manufactured in Indiana); *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823 (1938) (valid tax imposed on preparation, printing and publication of advertising in New Mexico and sums received for it).

■ We conclude the assessment of a gross receipts tax on the total receipts of goods sold to the New Mexico restaurants will not subject PFC to double or triple taxation and is fairly apportioned to its activities within this state. *Tyler Pipe Indus., Inc. v. Washington State Dep't of Revenue; Standard Pressed Steel Co. v. Washington.*

■ New Mexico's gross receipts tax applies equally to in-state and out-of-state sellers since it charges a uniform rate for any sale of property in New Mexico regardless. of the location of the seller. § 7–9–3(F). As noted above, the Act also provides a tax credit against taxes paid to other states. The present case is, therefore, distinguishable from *Tyler Pipe* and *Armco v. Hardesty*, 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984), where the Court determined the tax was facially discriminatory. In both of these cases, the states had imposed a gross receipts tax on persons engaged in the business of selling tangible personal property at wholesale. However, in-state manufacturers who were liable for a manufacturing tax were exempt from the payment of the tax. Out-of-state manufacturers, however, who were responsible in their state for a manufacturing tax were deemed discriminated against since they still remained liable for the gross receipts tax. In *Tyler Pipe* the Court indicated that a repeal of the manufacturing tax or a credit to out-of-state manufacturers for manufacturing taxes paid to other states would presumably cure the discrimination. *Tyler Pipe Indus., Inc. v. Washington State Dep't of Revenue.* Therefore, because New Mexico's gross receipts tax imposes a uniform tax for doing business in New Mexico and a credit for similar taxes paid to other states, it does not discriminate against interstate commerce.

The gross receipts tax assessed against PFC did not violate the commerce clause of the United States Constitution.

## II. NON–TAXABLE TRANSACTION CERTIFICATES

The Act allows a seller to deduct sales of tangible personal property made to a buyer who resells the property in the ordinary course of business. NMSA 1978, § 7–9–47 (Repl.1986). However, the buyer is required to deliver a non-taxable transaction certificate (NTTC) to the seller. *Id.* If the seller does not have possession of the NTTC within the time allowed, the deductions claimed shall be disallowed. § 7–9–43(B). The NTTCs "shall contain the information, and be in a form, prescribed by the division" and a properly executed NTTC shall be conclusive evidence that the proceeds from the transaction are deductible from gross receipts. § 7–9–43. A buyer's right to use a NTTC may be suspended for failing to pay the compensating tax on the subsequent use of the property. NMSA 1978, § 7–9–44 (Repl. 1986).

The secretary of the Department has the authority to issue regulations concerning the use and possession of NTTCs. NMSA 1978, § 7–1–5(A) (Repl.1986); *Rainbo Baking Co. v. Commissioner of Revenue*, 84 N.M. 303, 502 P.2d 406 (Ct.App.1972). The Department has adopted regulations limiting the use of NTTCs to buyers or lessees who have applied for and received authority to issue the NTTCs. G.R.Reg. 43:2(e). The buyer is to issue NTTCs to sellers on the "serially numbered form[s] specifically issued to the buyer or lessee by the Revenue Division." *Id.* This regulation also requires the buyer to account for all NTTCs issued to it and prohibits the use of the NTTCs by anyone other than the person to whom it was issued. *Id.* The parties have stipulated that the Department's acceptance of certificates issued by the Multistate Tax Commission is not relevant to this case.

■ PFC does not argue that the regulations issued by the Department regarding NTTCs are an improper implementation of the Act's provisions. *See* § 7–1–5(G) (presumption of proper implementation). Instead, PFC argues that it substantially complied with Section 7–9–47 by its timely possession of the Blanket Exemption Certificate and that it should not be penalized

for Denny's failure to provide it with a timely and proper NTTC. Although the Blanket Exemption Certificate contained the general information needed, it was not in a form prescribed by the Department and would require revamping of the Department's processing and verification procedures. PFC's observation that the statute requires the NTTC to be in a form prescribed by the Department rather than in any other form does not provide PFC any relief. The form prescribed by the Department required the NTTC to be serially numbered by the Department for verification purposes. There is no dispute that the Blanket Exemption Certificate relied upon by PFC failed to meet this requirement.

The Department argues that if Denny's were permitted to use its own form as an NTTC, the Department would lose control over dispensing of, accounting for, and revoking of a buyer's authority to use the NTTCs. According to the Department, this would in turn deprive it of an essential enforcement tool in closely scrutinizing the deductions claimed and ensuring that the buyer is registered and continues to be registered with the state. Deductions are to be construed narrowly but reasonably and must be clearly established by the taxpayer claiming the deduction. *Chavez v. Commissioner of Revenue*, 82 N.M. 97, 476 P.2d 67 (Ct.App.1970). Although simplification of reporting requirements is to be encouraged, PFC cites no authority to support its argument that the Blanket Exemption Certificate qualifies it for the deduction. *Cf. Leaco Rural Tel. Coop., Inc. v. Bureau of Revenue*, 86 N.M. 629, 526 P.2d 426 (Ct.App.1974) (taxpayer's holding of NTTCs in compliance with statute but improperly issued by buyer were conclusive proof that transactions were deductible despite fact that transactions were not sales of tangible personal property).

PFC has failed to clearly establish its right to claim the deduction provided for in Section 7–9–47. Although we do not favor a rule which exhaults form over substance, PFC's failure to possess an NTTC in the'

form prescribed by the Department and to procedurally present the form in a timely and proper manner provided a valid basis for denying the deductions claimed. *See* § 7–9–43. Where a party claiming a right to an exemption or deduction fails to follow the method prescribed by statute or regulation, he waives his right thereto. *See Dillard v. New Mexico State Tax Comm'n*, 53 N.M. 12, 201 P.2d 345 (1948); *see also Cottonwood Gulch Found. v. Gutierrez*, 102 N.M. 667, 699 P.2d 140 (Ct.App.1985) (nonprofit educational foundation's failure to apply for property tax exemption precluded county assessor from granting tax exempt status, even though the state constitution expressly exempts such property). The Department did not err in disallowing the deductions claimed on the Blanket Exemption Certificate.

## III. COMPENSATING TAX

PFC next argues that it should not be liable for gross receipts tax because the appropriate tax is the compensating tax. In answer, the Department maintains that the Act contemplates the gross receipts tax as the predominant tax and the compensating tax applies only when gross receipts cannot be collected. *See* § 7–9–7. The Department asserts that neither Denny's nor Grandy's owe tax under Section 7–9–7 for property acquired in New Mexico. The Department also notes that Denny's may have a claim for refund of compensating taxes erroneously paid, but that it is not a party to this action.

As observed above, the record supports a finding that PFC is engaged in the business of selling property in New Mexico, and is therefore liable for payment of this state's gross receipts tax on the receipts of such sales. §§ 7–9–3 and –4. PFC cites no authority for its proposition that the voluntary payment of compensating tax by the buyer relieves the seller of liability for gross receipts tax otherwise collectible.

Hence, this contention may properly be disregarded upon appeal. *See In re Adoption of Doe,* 100 N.M. 764, 676 P.2d 1329 (1984). Moreover, a party seeking an exemption or deduction has the burden of establishing his right thereto. *See Chavez v. Commissioner of Revenue.*

We affirm the decision and order of the administrative hearing officer.

IT IS SO ORDERED.

ALARID and GARCIA, JJ., concur.