829 P.2d 946

**CONTINENTAL INN OF
ALBUQUERQUE, INC.,**
Petitioner–Appellant,

v.

**NEW MEXICO TAXATION AND
REVENUE DEPARTMENT,**
Respondent–Appellee.

No. 12658.

Court of Appeals of New Mexico.

March 17, 1992.

Mary E. McDonald, Perry E. Bendicksen, III, Sutin, Thayer & Browne, P.C., Santa Fe, for petitioner-appellant.

Tom Udall, Atty. Gen., Carolyn A. Wolf, Sp. Asst. Atty. Gen., Frank D. Katz, Sp. Asst. Atty. Gen., Santa Fe, for respondent-appellee.

## OPINION

FLORES, Judge.

Continental Inn of Albuquerque, Inc. (taxpayer) appeals from the decision and order of the New Mexico Taxation and Revenue Department (Department), pursuant to NMSA 1978, § 7–1–25 (Repl.Pamp.1990). The Department's decision and order, in material part, upheld the assessment of compensating tax on the value of construction materials and services purchased by taxpayer from various contractors and materialmen (subcontractors). Taxpayer's sole issue on appeal is whether the Department's conclusion that taxpayer owes compensating tax on the value of the property and services purchased from persons to whom nontaxable transaction certificates were issued, is in accordance with law. We affirm.

## FACTS

Taxpayer is a New Mexico corporation formed to construct, own, and operate a hotel in Albuquerque. In 1984 and 1985 taxpayer built the Continental Inn of Albuquerque. Taxpayer, acting as the prime contractor, entered into separate contracts with various subcontractors for the purchase of construction materials and services to be used in the construction of a hotel. Each contract, prepared by taxpayer's attorney, contains a provision stating, in part: "The [subcontractor] shall pay all sales, consumer, use and other similar taxes for the [w]ork or portions thereof provided by the [subcontractor]." Mr. Gagosian, taxpayer's corporate officer in charge of overseeing the construction of the hotel, testified that such language was included in each contract in order to protect taxpayer from any state tax liability for the construction of the hotel by advising subcontractors that they were liable for the pay-

ment of state taxes. Mr. Gagosian further testified that the language was also included in each contract so that taxpayer would not have to research, or hire a tax attorney to advise them on, the tax laws of each state.

Notwithstanding the contractual provision, taxpayer issued numerous nontaxable transaction certificates (NTTCs) to subcontractors involved in providing materials and services for the construction of the hotel. Mr. Gagosian testified that Ms. Connie Swanson, taxpayer's bookkeeping employee, had received various telephone calls, during the construction phase of the project, from subcontractors requesting NTTCs. Mr. Gagosian further testified that Ms. Swanson applied for and procured NTTCs from the Department and submitted them to Mr. Gagosian stating that the NTTCs should be completed. Without making further inquiry, the NTTCs were completed and signed by Mr. Gagosian. Mr. Gagosian testified that he did not intend that the delivery of the NTTCs to subcontractors would act to shift the state tax liability from the subcontractors back to taxpayer. Mr. Gagosian testified that none of the subcontractors reduced their contract prices as a result of receiving NTTCs from taxpayer.

In April 1988, the Department assessed compensating tax plus interest and penalties against taxpayer, pursuant to NMSA 1978, Section 7–9–7(A)(3) (Repl.Pamp.1983), for the reporting period August 1, 1984, through September 30, 1987. Taxpayer protested the assessment.

## COMPENSATING TAX

Taxpayer first argues that it is not subject to compensating tax. The Gross Receipts and Compensating Tax Act (Act), NMSA 1978, Sections 7–9–1 to –81 (Repl.Pamp.1983), imposes a compensating tax on the person using property or services rendered in New Mexico for the privilege of using such property or services. § 7–9–7. Compensating tax is imposed on the buyer where property or services were acquired as the result of a transaction which was not initially subject to the gross

receipts tax, but because of the buyer's subsequent use of such property or services, should have been subject to the gross receipts tax. § 7–9–7(A)(3). In this case, taxpayer is the "buyer" of such property and services.

Taxpayer argues that, pursuant to Section 7–9–4, subcontractors owe gross receipts tax on their receipts from selling the construction materials and services to taxpayer. The Act imposes gross receipts tax on the seller for the privilege of engaging in business in New Mexico. § 7–9–4. In this case, subcontractors are the "sellers" of such property and services. Taxpayer argues that gross receipts tax was initially applicable to subcontractors for the sale of materials and services at the time of the sales transaction. Therefore, taxpayer argues, because Section 7–9–7 applies only where the taxpayer's acquisition of property and services was *not* initially subject to the gross receipts tax, the compensating tax was improperly imposed on taxpayer. We do not agree.

■ The Act provides for a deduction from gross receipts tax by the seller of construction materials and construction services who sells to a person engaged in the construction business. §§ 7–9–51, –52. In order to take a deduction from gross receipts tax, the person engaged in the construction business must deliver a NTTC to the seller. *Id.* The Department contends, and we agree, that Section 7–9–7 is designed to impose compensating tax on transactions such as the one at hand which initially would have been subject to the gross receipts tax were it not for the delivery of the NTTCs by the buyer of the materials or services pursuant to Section 7–9–51 or 7–9–52. Section 7–9–51 provides, in part:

B. The buyer delivering the nontaxable transaction certificate must incorporate the tangible personal property as:

(1) an ingredient or component part of a construction project which is subject to the gross receipts tax upon its completion or upon the completion of the overall construction project of which it is a part; or

(2) an ingredient or component part of a construction project which is subject to the gross receipts tax upon the sale in the ordinary course of business of the real property upon which it was constructed.

Similarly, Section 7–9–52 provides, in part:

B. The buyer delivering the nontaxable transaction certificate must have the construction services performed upon:

(1) a construction project which is subject to the gross receipts tax upon its completion or upon the completion of the overall construction project of which it is a part; or

(2) a construction project which is subject to the gross receipts tax upon the sale in the ordinary course of business of the real property upon which it was constructed.

■ The Department argues that the effect of Sections 7–9–51 and 7–9–52 is to avoid the pyramiding of gross receipts tax on construction projects by allowing the prime contractor to purchase construction materials and subcontract construction labor, tax free, so long as the construction project is subject to gross receipts tax upon the construction project's completion or sale in the ordinary course of business by the prime contractor. In this regard, taxpayer initially argues that the subcontractors would only be entitled to the deductions if the subcontractors had sold their construction materials and services to a buyer "engaged in the construction business." We address whether taxpayer is "engaged in the construction business." Taxpayer admits in its brief in chief that it was formed to "construct" a hotel in New Mexico. The record reflects that taxpayer did "construct" a hotel in New Mexico. Additionally, there is evidence that taxpayer held a contractor's license and held itself out to the public as a contractor. There is sufficient evidence in the record to conclude that taxpayer was "engaged in the construction business."

■ Upon receipt of the NTTCs, the subcontractors were entitled to take a deduction from the gross receipts tax pursuant to Section 7–9–51 or 7–9–52. Taxpayer ad-

ditionally argues that the subcontractors would only be entitled to a deduction pursuant to Section 7–9–51 or 7–9–52 if taxpayer delivered NTTCs to subcontractors in order to incorporate the construction materials or services in a construction project which was subject to the gross receipts tax upon its completion or upon sale of the construction project in the "ordinary course of business." Taxpayer argues that it never intended to be subject to gross receipts tax either upon the completion of the project, because of its contractual provision with subcontractors, or upon its sale, because it never intended to construct the hotel in order to sell it "in the ordinary course of business."

The Secretary of the Department has the authority to issue regulations concerning the use of NTTCs. *See* NMSA 1978, § 7–1–5(A) (Repl.Pamp.1983). The Department has adopted a regulation subjecting the buyer who uses NTTCs to compensating tax. G.R. Regulation 7:6 states, in part:

> A person engaged in the construction business who purchases construction materials and construction services using [NTTCs] provided by the department for use under Sections 7–9–51 and 7–9–52 is liable for the compensating tax on the value of the materials and services purchased at the time when the construction project is initially leased or otherwise occupied prior to the sale.

Because the use of the NTTCs, not the taking of the deduction, subjects taxpayer to compensating tax, we find taxpayer's argument in this regard to be without merit.

■ Taxpayer further contends that the contracts with the subcontractors prevent the application of compensating tax on taxpayer because the contractual provision provided that the liability of paying all sales, consumer, use, and other similar taxes was on the subcontractors. However, contracts between a taxpayer and a third party regarding the payment of taxes cannot shift the taxpayer's legal incidence of the tax as between the state and the taxpayer. *See First Nat'l Bank v. Commissioner of Revenue,* 80 N.M. 699, 460 P.2d

64 (Ct.App.1969), *appeal dismissed,* 397 U.S. 661, 90 S.Ct. 1407, 25 L.Ed.2d 643 (1970).

## GOOD FAITH

■ Taxpayer argues that the subcontractors' possession of the NTTCs is not conclusive on the application of the deductions available pursuant to Sections 7–9–51 and 7–9–52. We do not agree. First, taxpayer contends that the NTTCs were erroneously issued by taxpayer. The deduction from gross receipts pursuant to Sections 7–9–51 and 7–9–52 is not conditioned upon proper issuance of the NTTCs by the buyer. The determination of whether a NTTC has been properly issued is a matter between the Department and the buyer. *Leaco Rural Tel. Coop., Inc. v. Bureau of Revenue,* 86 N.M. 629, 526 P.2d 426 (Ct. App.1974). In *Leaco,* this court stated that NMSA 1953, Repl.Vol. 10 (1961), § 72–16A–13(A) (Supp.1973) (predecessor to NMSA 1978, § 7–9–43(A) (Repl.Pamp.1983)), explicitly protects a seller holding a NTTC in compliance with the statutory provisions of that section. *Leaco,* 86 N.M. at 632, 526 P.2d at 429.

■ Section 7–9–43(A) provides, in pertinent part:

> When the seller * * * accepts a [NTTC] within the required time and in good faith that the buyer * * * will employ the property or service transferred in a nontaxable manner, the properly executed [NTTC] shall be conclusive evidence, and the only material evidence, that the proceeds from the transaction are deductible from the seller's * * * gross receipts.

Taxpayer does not contend that the NTTCs were untimely accepted or that the NTTCs were improperly executed, but rather, taxpayer argues that the subcontractors did not accept the NTTCs in good faith as required pursuant to Section 7–9–43(A) and thus, could not avail themselves of the deductions pursuant to Sections 7–9–51 and 7–9–52. Taxpayer argues that the contractual provision, which shifted all state tax liability to subcontractors, placed the subcontractors on notice that payment of

gross receipts tax would be the obligation of the subcontractors. However, the timely delivery of a NTTC from the buyer to the seller conveys a message to the seller that the use of the NTTCs is such that the seller is entitled to deductions under Section 7–9–51 or Section 7–9–52. This court, in *Gas Co. v. O'Cheskey,* 94 N.M. 630, 632, 614 P.2d 547, 549 (Ct.App.1980), stated: "The issuance of a '[NTTC]' does not operate to transform an otherwise taxable transaction into a nontaxable transaction. It represents a statement by the purchaser of goods that its use is such that the seller is entitled to a *deduction* from its taxable receipts." Here, when taxpayer issued NTTCs to the subcontractors, taxpayer, in, essence, represented to the subcontractors that the use of the NTTCs was such that the subcontractors were entitled to deductions from gross receipts tax. Accordingly, we do not agree that the NTTCs were erroneously issued or that the statutory provisions of Section 7–9–43(A) were not met.

*CONCLUSION*

For the foregoing reasons, we affirm the decision and order of the Department. No costs are awarded.

IT IS SO ORDERED.

ALARID, C.J., and BLACK, J., concur.