889 P.2d 1238

**SIEMENS ENERGY & AUTOMATION, INC., Petitioner–Appellant,**

v.

**NEW MEXICO TAXATION AND REVENUE DEPARTMENT, Respondent–Appellee.**

**No. 15398.**

Court of Appeals of New Mexico.

Dec. 30, 1994.

Mary E. McDonald, Franklin Jones, Sutin, Thayer & Browne, P.C., Santa Fe, for petitioner-appellant.

Tom Udall, Atty. Gen., Frank D. Katz, Sp. Asst. Atty. Gen., Santa Fe, for respondent-appellee.

## OPINION

BLACK, Judge.

Siemens Energy and Automation, Inc. (Siemens) is a manufacturer of various electrical products. In order to coordinate and facilitate the collection of taxes from such national corporations, New Mexico executed a Multistate Tax Compact (the Compact) with several other states, which established the Multistate Tax Commission (MTC). An MTC auditor examined Siemens' sales for compliance with New Mexico gross receipts tax for the period extending from October 1, 1986, through June 30, 1990. Based on the audit results, the New Mexico Taxation and Revenue Department (the Department) assessed Siemens $89,402.11 in gross receipts tax, $8,940.25 in penalty, and $55,085.94 in interest. Pursuant to NMSA 1978, Section 7-1-25 (Repl.Pamp.1993), Siemens appeals that assessment. We affirm in part and reverse in part.

## I. FACTS

Although it has no manufacturing facilities in New Mexico, Siemens does maintain a sales office in Albuquerque. A high percentage of Siemens' sales are to national distributors who request that Siemens ship the products directly to their customers. These transactions are referred to as "three-party interstate transactions" or "drop shipments." When three-party interstate transactions involve a New Mexico shipping destination, Siemens may receive a Multistate Tax Commission Uniform Sales and Use Tax Certificate (MTC certificate) from the purchaser. In such an MTC certificate, the purchaser represents that the sale is exempt from New Mexico gross receipts tax.

An invoice of a sale to Westinghouse Electric (Westinghouse) and invoices of three sales to Triangle Electric (Triangle) were included in the assessment as subject to gross receipts tax, even though representatives of Siemens testified that they had in their possession what purported to be MTC certificates from Westinghouse and Triangle. These certificates contained the New Mexico registration numbers of the purchasers in the space provided for that purpose on the face of the certificates.

In other transactions, Siemens sells property directly to New Mexico purchasers for the purchasers' own use. In some of these instances, when Siemens did not add an amount for New Mexico gross receipts tax on the invoice, the purchaser itself remitted compensating use tax to the Department.

The MTC auditor reviewed individually all invoices involving sales of greater than $100,000 for the entire audit period. The MTC auditor chose sample months from which to review all invoices involving sales of less than $100,000. For those invoices, the MTC auditor analyzed the under-$100,000 sales in the sample months to determine whether New Mexico gross receipts tax should have been paid. The MTC auditor determined an error rate for the sample months, which was extrapolated over the entire period. On the basis of this error rate, gross receipts tax, penalty, and interest were assessed on the under-$100,000 sales.

## II. STANDARD OF REVIEW

Under the statutory procedure for review of decisions by a hearing officer of the De-

partment, we are to set aside the decision only if it is "found to be: (1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." Section 7–1–25(C). We will discuss this standard further as we apply it in deciding the issues.

### III. *THE TRIANGLE CERTIFICATES*

■ "The Multistate Tax Commission, in cooperation with various states and taxpayers, has created a uniform sales and use tax exemption certificate. The certificate is filled out by buyers claiming sales tax exemptions and is maintained on file by sellers." 1 *State Tax Guide* (CCH) ¶ 395, at 434 (Dec. 1993); *see generally* NMSA 1978, § 7–5–1 (Repl.Pamp.1993) (setting out provisions of the Compact, including provision on tax exemption certificates). The MTC certificate, like a New Mexico Nontaxable Transaction Certificate (NTTC), is delivered by the purchaser to the seller as the documentation required to support the exclusion of the sale from local sales or gross receipts tax.

The hearing examiner determined that the certificate delivered by Triangle to Siemens was not in the proper form required to merit an MTC exemption. On casual examination the certificate appears to be in the usual form, and the hearing examiner made no finding as to why it was invalid.

■ While an assessment is presumed to be correct, the taxpayer may overcome this presumption by presenting evidence that the assessment is invalid. *Floyd & Berry Davis Co. v. Bureau of Revenue,* 88 N.M. 576, 577–78, 544 P.2d 291, 292–93 (Ct.App.1975). In the present case, Stephen R. Seabolt, a Certified Public Accountant and Siemens' Manager of Corporate Taxes, testified before the hearing examiner. With regard to the sales to Triangle, Seabolt testified that Siemens attached "copies of two multi-jurisdictional exemption certificates that were made available to the multi-state auditor, one dated 11/24/81 and one dated 01/14/88 from our files and also copies of the three Triangle Electric invoices showing that they are three-party drop shipment type transactions." The Department presented no testimony on this subject and did not even cross-examine Seabolt as to why the Triangle certificates were not valid. The Department now argues, however, that Siemens had the burden of proof and that Seabolt's testimony was insufficient to meet that burden.

The Department's contention that Seabolt's testimony was insufficient because he referred to the certificates as "multi-jurisdictional certificates," rather than "multi-state certificates," is without merit. The form that the Department concedes is valid is entitled "Uniform Sales & Use Tax Certificate/Multi-jurisdiction." Moreover, nothing in the record indicates that the slight semantic difference in Seabolt's testimony was misunderstood or caused any confusion.

■ At oral argument on appeal, the Department also maintained that the MTC certificates introduced by Siemens deleted the instructions on the back of the page. Although the copy in the record contains no instructions on the back, this alleged defect was not raised below. If the issue had been raised, perhaps Siemens could have established that the original had instructions on the back. Furthermore, the hearing officer made no finding that the instructions were missing, nor did he indicate the significance of such a deletion.

The only evidence in the record on this point is that Siemens submitted valid multi-state certificates on the three sales to Triangle referenced by Seabolt. Because there is no evidence to support the hearing officer's finding to the contrary, that finding violates Section 7–1–25(C)(1) and (2). *Cf. Union County Feedlot, Inc. v. Vigil,* 79 N.M. 684, 686, 448 P.2d 485, 487 (Ct.App.1968) (holding that if order is supported by substantial evidence and is in accordance with law, its entry is not an abuse of discretion).

### IV. *AN MTC CERTIFICATE IS NOT AUTOMATICALLY INVALID MERELY BECAUSE THE PURCHASER INCLUDES A NEW MEXICO TAXPAYER IDENTIFICATION NUMBER*

■ An MTC certificate contains several spaces to be completed by the purchaser on

each transaction that the purchaser represents is entitled to a tax exemption. Among these is a "State Registration or ID No." for each state that accepts such MTC certificates, including New Mexico. 1 *State Tax Guide* (CCH) ¶ 395, at 435 (Sept. 1993). The seller then must execute the form under the following certification:

> I further certify that if any property so purchased tax free is used or consumed by the firm as to make it subject to a Sales or Use Tax we will pay the tax due directly to the proper taxing authority when state law so provides or inform the seller for added tax billing. This certificate shall be part of each order which we may hereafter give to you, unless otherwise specified, and shall be valid until canceled by us in writing or revoked by the city or state.

> Under penalties of perjury, I swear or affirm that the information on this form is true and correct as to every material matter.

*Id.*

The relevant portion of the Compact is contained in Section 7–5–1, Article V, which is entitled "Elements of Sales and Use Tax Laws." The applicable language provides:

> 2. Whenever a vendor receives and accepts in good faith from a purchaser a resale or other exemption certificate or other written evidence of exemption authorized by the appropriate state or subdivision taxing authority, the vendor shall be relieved of liability for a sales or use tax with respect to the transaction.

The language in this provision has been interpreted to offer a seller who accepts such a certificate in good faith "a safe harbor that provides absolute relief from sales tax liability irrespective of whether the underlying transaction qualified for an exemption." *All Star Amusement, Inc. v. Director of Revenue,* 873 S.W.2d 843, 844 (Mo.1994) (en banc). Moreover, the good faith belief of the seller "may rest solely upon the representations made by the buyer in the exemption certificate, as such reliance fulfills the func-

tion of exemption certificates." *Id.* at 845 (footnote omitted).

The Missouri Supreme Court's interpretation of the purpose and role of MTC certificates is virtually identical to this Court's treatment of NTTCs, which serve the same purpose in intrastate transactions that are served by MTCs for interstate drop shipments. Regarding NTTCs, this Court stated in *Continental Inn v. New Mexico Taxation & Revenue Department,* 113 N.M. 588, 829 P.2d 946 (Ct.App.1992):

> The deduction from gross receipts pursuant to Sections 7–9–51 and 7–9–52 is not conditioned upon proper issuance of the NTTCs by the buyer. The determination of whether a NTTC has been properly issued is a matter between the Department and the buyer....

> ... However, the timely delivery of a NTTC from the buyer to the seller conveys a message to the seller that the use of the NTTCs is such that the seller is entitled to deductions under Section 7–9–51 or Section 7–9–52. This court, in *Gas Co. v. O'Cheskey,* 94 N.M. 630, 632, 614 P.2d 547, 549 (Ct.App.1980), stated: "The issuance of a '[NTTC]' does not operate to transform an otherwise taxable transaction into a nontaxable transaction. It represents a statement by the purchaser of goods that its use is such that the seller is entitled to a *deduction* from its taxable receipts."

*Continental Inn,* 113 N.M. at 591–92, 829 P.2d at 949–50.

■ The hearing officer excluded the Triangle certificates and one certificate from Westinghouse because those MTC certificates contained the purchaser's New Mexico taxpayer identification number, as required on the MTC form. It is the contention of the Department, which was accepted by the hearing officer, that mere possession of a New Mexico taxpayer identification number proves that the purchaser has sufficient nexus with New Mexico so that its use of an MTC certificate is invalid. We disagree.

Initially, we note that the Department's argument that any taxpayer with a New

Mexico identification number is disqualified from using an MTC is based on a questionable interpretation of New Mexico law. An interstate entity whose activities in New Mexico do not necessarily create sufficient nexus for gross receipts tax liability can still register and obtain a New Mexico identification number from the Department. The Tax Administration Act, NMSA 1978, Sections 7–1–1 to –82 (Repl.Pamp.1993 & Supp.1994), applies to the Department's administration and enforcement of forty-one separate New Mexico tax provisions, only one of which is the Gross Receipts and Compensating Tax Act. NMSA 1978, § 7–1–2 (Supp.1994). A taxpayer therefore might choose to register either to pay New Mexico taxes other than gross receipts tax, or to obtain New Mexico NTTCs. The relevant provision of the Tax Administration Act provides that:

A. The director by regulation shall establish a system for the registration and identification of taxpayers and shall require taxpayers to comply therewith.

. . . .

C. The director by regulation also shall provide for a system for the registration and identification of purchasers or lessees who, by reason of their status or the nature of their use of property or service purchased or leased, are ordinarily entitled to make nontaxable purchases or leases of some kinds of property or service, and may require such purchasers or lessees to comply therewith.

NMSA 1978, § 7–1–12 (Repl.Pamp.1993).

Thus, the mere possession of a New Mexico registration number does not mean that the taxpayer is "registered with New Mexico for gross receipts tax purposes," as the hearing officer stated in his Conclusions of Law. Therefore, the possession of a New Mexico taxpayer identification number does not mean that, by being registered with New Mexico for tax purposes, Westinghouse has acknowledged that nexus exists with respect to its activities in New Mexico for gross receipts tax purposes. The record contains no information on what New Mexico taxes, if any, were being paid by Westinghouse and Triangle. The record also does not indicate why they possessed New Mexico taxpayer identification numbers.

The Department's Regulation GR 43:8, Multijurisdictional Uniform Sales and Use Tax Certificates, N.M. Taxation and Revenue Dep't Reg. 43:8, 1 N.M. Reg. No. 23, at 62 (Dec. 14, 1990), sets out the conditions under which the Department will allow a seller's deduction of receipts from gross receipts tax when the seller is in possession of an MTC certificate. The third condition listed under GR 43:8 states that the MTC certificate can be used only when "[t]he purchaser's activity within or into New Mexico does not create nexus for liability under either the gross receipts tax or as an agent for the collection of compensating tax." This condition is consistent with, and presumably the source of, the instructions relating to New Mexico that are found on the MTC certificate forms:

New Mexico will accept, in lieu of a nontaxable transaction certificate and as evidence of the deductibility of a specific transaction, this certificate only when the following conditions exist:

(a) Both the seller and purchaser are located outside New Mexico;

(b) The seller maintains sufficient nexus within New Mexico to be subject to the New Mexico gross receipts tax on its transaction in or into New Mexico;

(c) The purchaser's activity within or into New Mexico does not create nexus for liability under either the gross receipts tax or as an agent for the collection of compensating tax; and

(d) The purchaser requests that the seller deliver or "drop-ship" the tangible personal property to the purchaser's customer in New Mexico.

1 *State Tax Guide* (CCH) ¶ 395, at 437 n. 4 (Sept. 1994).

The testimony was undisputed that Siemens' sales to Westinghouse and Triangle complied with instructions (a), (b), and (d).

However, the Department contends that because both Westinghouse and Triangle listed New Mexico taxpayer identification numbers on the front of the MTC certificates, those purchasers obviously have sufficient nexus with New Mexico to prohibit their use of MTC certificates. According to the Department, Siemens' acceptance of an MTC form from them therefore could not have been in good faith. The question, then, is whether mere possession of a New Mexico taxpayer identification number by a foreign purchaser automatically precludes a seller from ever accepting an MTC certificate from such purchaser in good faith.

The Department's interpretation of GR 43:8(3) creates a "Catch–22" for any seller accepting an MTC certificate from a purchaser who lists the required New Mexico taxpayer identification number. Seabolt defined the nature of this dilemma to the hearing officer:

> [I]t just doesn't make sense to me that the multi-jurisdictional certificate would ask for a tax registration number [and] on the back contradict exactly what it is asking for in front of the sheet. That doesn't make sense to me. Because you say it is not valid because they are registered in the state, but yet on the back under the New Mexico criteria, what you are basically saying is that if you are registered in the state then this is not any good. So, why does New Mexico even have [their] name on there.
>
> . . . .
>
> The thing is that this is in—when we published our sales tax manual that goes out to our divisions and our salespeople this is in there and our salesmen obviously are laymen and don't know sales tax law and [it's] in here and when they get it with their registration they accept it. They're not technical experts and I don't profess to be . . . .

As Seabolt states, the validity of New Mexico's agreement to honor the MTC certificate is cast in serious doubt by the Department's interpretation of its instructions to disqualify a purchaser who completes all the required blanks on the form.

In 1967, the Compact, an alternative to proposed taxation bills pending in Congress, created the MTC. 1 *State Tax Guide* (CCH) ¶ 351, at 355–3 (Dec. 1993). The purposes of the Compact are enumerated in Section 7–5–1, Article I, as follows:

> 1. Facilitate proper determination of state and local tax liability of multistate taxpayers, including the equitable apportionment of tax bases and settlement of apportionment disputes.
>
> 2. Promote uniformity or compatibility in significant components of tax systems.
>
> 3. Facilitate taxpayer convenience and compliance in the filing of tax returns and in other phases of tax administration.
>
> 4. Avoid duplicative taxation.

The Department's interpretation would rob the MTC certificate of its value in promoting uniformity or compatibility and facilitating taxpayer convenience and compliance. Under the Department's view, each time a purchaser listed a New Mexico taxpayer identification number, the seller would have to make specific inquiry into the purchaser's nexus with New Mexico. To interpret GR 43:8(3) or the MTC instructions as creating a trap for interstate commerce would therefore produce a result contrary to the general purpose of the Compact. Such a result should be avoided. *See generally Garcia v. Borden, Inc.*, 115 N.M. 486, 493, 853 P.2d 737, 744 (Ct.App.), *cert. denied*, 115 N.M. 409, 852 P.2d 682 (1993) (stating that a specific statutory section should not be read to produce a result that is contrary to the general purpose of the act at issue).

If a seller must presume that any purchaser with a New Mexico taxpayer identification number is automatically disqualified, it places the burden on the seller to determine, at the seller's own peril, the nature of the purchaser's nexus with New Mexico. As counsel for Siemens points out, the meaning and nature of nexus can be difficult, even for a sophisticated attorney. *See generally Quill Corp. v.*

*North Dakota,* 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) (discussing the difference between the nexus required for state taxation to satisfy the commerce clause, and nexus required to satisfy the due process clause of the United States Constitution). An interpretation which would require sellers to make a factual inquiry, and then make such a sophisticated legal decision on each MTC received from purchasers across the country, would totally eviscerate any purpose for the MTC certificate and render the Compact a sham in this area. Siemens was entitled to rely on the certifications contained on the MTC certificates received from Westinghouse and Triangle. The Department failed to produce any evidence that Siemens did not accept the MTC certificates in good faith. We therefore hold that the fact Westinghouse and Triangle included their New Mexico taxpayer identification numbers, without more, does not invalidate Siemens' reliance upon the MTC certificates.

## V. *SIEMENS FAILED TO PRESERVE A CHALLENGE TO EXCLUSION OF EVIDENCE ON AUDITING TECHNIQUES*

■ Siemens attempted to introduce evidence at the formal hearing that no invoices for three-party interstate sales were removed from the invoices of under-$100,000 sales in the sample months. The attorney for the Department objected to the introduction of evidence and argument on this issue. The hearing officer ruled that the evidence on this issue would be excluded on the basis that the issue had not been raised in Siemens' protest letter. The hearing officer further noted that, as a consequence of Siemens' failure to raise the issue earlier, the Department was not alerted to the issue and therefore did not have an available witness to rebut any evidence that Siemens might present on that issue.

On appeal, Siemens contends that "the invoices for three-party interstate sales should all have been removed from the under-$100,000 invoices in the sample months." Siemens reasons that, "[b]ecause the error rate in the sample months was extrapolated to all of the under-$100,000 sales in the entire audit period, the accuracy of the sample technique is of high importance to the validity of the Assessment." Unfortunately, we cannot evaluate the validity of these arguments because Siemens did not make a record on this issue.

Error on appeal may not be predicated upon a ruling to exclude evidence unless the substance of the evidence excluded was made known to the court by an offer of proof. *See* SCRA 1986, 11–103(A)(2) (Repl.1994); *Nichols Corp. v. Bill Stuckman Constr., Inc.,* 105 N.M. 37, 39, 728 P.2d 447, 449 (1986). Siemens made no such tender to the hearing officer. Thus, we will not review the exclusion of this evidence.

## VI. *EQUITABLE RECOUPMENT DOES NOT APPLY*

In addition to disputing the three-party transactions under $100,000, Siemens questions the inclusion of three transactions where, although Siemens had failed to pay gross receipts tax, the purchasers actually paid compensating use tax on the sales.

■ Compensating tax is paid by a New Mexico purchaser only if the sales occurred outside of New Mexico. NMSA 1978, § 7–9–7(A) (Repl.Pamp.1993). Gross receipts tax is due from the seller on its receipts from the sales only if the sales occurred inside New Mexico. NMSA 1978, § 7–9–3(F) (Supp. 1994). Therefore, the determination as to which tax applies turns on the point of sale. *See generally Union County Feedlot, Inc. v. Vigil,* 79 N.M. 684, 448 P.2d 485 (Ct.App. 1968) (determining applicability of compensating tax). In the present case, three New Mexico purchasers apparently noticed that the Siemens' invoice did not contain an amount for gross receipts tax, and voluntarily paid compensating tax on the property purchased for use in New Mexico. However, voluntary payment of compensating tax by the purchaser does not relieve the seller of liability for gross receipts tax otherwise collectible. *Proficient Food Co. v. New Mexico*

*Taxation & Revenue Dep't*, 107 N.M. 392, 397–98, 758 P.2d 806, 811–12 (Ct.App.), *cert. denied*, 107 N.M. 308, 756 P.2d 1203 (1988). Siemens seeks to avoid this rule by reliance upon the doctrine of equitable recoupment.

We recently considered the doctrine of equitable recoupment in *Vivigen, Inc. v. Minzner*, 117 N.M. 224, 870 P.2d 1382 (Ct.App. 1994). In *Vivigen*, we recognized that "[t]he doctrine of equitable recoupment in the tax-collection context has been developed primarily in the federal courts." *Id.* at 229, 870 P.2d at 1387. More importantly, we specifically held that New Mexico would "follow the weight of authority and adopt the standard set forth by the federal courts for application of the doctrine of equitable recoupment to tax collections." *Id.* at 231, 870 P.2d at 1389.

The federal courts have narrowly applied the doctrine of equitable recoupment to very limited situations. *Kramer v. United States*, 186 Ct.Cl. 684, 406 F.2d 1363, 1370 (1969); *see generally* James E. Tierney, *Equitable Recoupment Revisited: The Scope of the Doctrine in Federal Tax Cases after United States v. Dalm*, 80 Ky.L.J. 95, 116–17 (1990–91) (reviewing modern application of doctrine of equitable recoupment). For example, the federal courts have required a strict identity of interest when multiple taxpayers are involved in the transaction at issue. *See Stone v. White*, 301 U.S. 532, 537, 57 S.Ct. 851, 853, 81 L.Ed. 1265 (1937); *Estate of Vitt v. United States*, 706 F.2d 871, 875 n. 3 (8th Cir. 1983); *Lockheed Sanders, Inc. v. United States*, 862 F.Supp. 677, 681 (D.N.H.1994); *Kramer*, 406 F.2d at 1370–71; Tierney, *supra*, at 122 & n. 109 (discussing recoupment and related parties).

> This [requirement] is in keeping with the equitable nature of the doctrine because it would clearly be unfair to allow the government to recoup a barred deficiency of one taxpayer against an open refund of another where all or even only a part of such refund would or could possibly inure to the benefit of innocent third parties.

Arthur W. Andrews, *Modern–Day Equitable Recoupment and the "Two Tax Effect:"*

*Avoidance of the Statutes of Limitation in Federal Tax Controversies*, 28 Ariz.L.Rev. 595, 612 n. 85 (1986); *see also Smith v. United States*, 373 F.2d 419, 424 (4th Cir. 1966) (stating that "[e]quitable relief will not be granted to the possible detriment of innocent third parties").

While the compensating use tax and gross receipts tax would both tax the same event, Siemens' sale of equipment, there is not an identity of interest between the purchasers and sellers. Siemens and the purchasers are totally distinct entities that do not have an identity of interest. A savings to Siemens under equitable recoupment would not necessarily redound to the benefit of the purchasers. This lack of congruity between Siemens and the purchasers is emphasized by the fact that, by paying compensating tax rather than gross receipts tax, the purchasers did not pay the additional amount local governments are entitled to under the gross receipts tax. NMSA 1978, § 7–9–3(Q) (Supp.1994). When one taxpayer seeks a tax credit for a different amount paid by another taxpayer, equitable recoupment does not apply. *See Kretchmar v. United States*, 9 Cl.Ct. 191, 206 (1985); *Kramer*, 406 F.2d at 1370–71.

## VII. *CONCLUSION*

There is no evidence in the record to support the hearing officer's finding that the certificates from Triangle did not meet MTC or New Mexico requirements. That finding is reversed.

The primary purpose of the Compact is to make state tax systems fair, effective, and efficient as they apply to interstate commerce. To this end, the MTC has adopted a uniform certificate, which, when accepted by the seller in good faith entitles the seller to treat the sale as exempt from gross receipts tax. The presence of the purchaser's taxpayer identification number is not, by itself, evidence that the seller did not accept the certificate in good faith. Indeed, there is no evidence in this record that Siemens did not accept the MTC certificates from Westinghouse and Triangle in good faith. Thus, the

**324**

hearing officer's findings on this issue are not supported by substantial evidence and must be reversed.

Siemens failed to offer a tender of what the evidence on third-party drop shipments under $100,000 would prove. We therefore cannot entertain this issue on appeal and affirm on this issue.

■ Equitable recoupment requires a strict identity of interests. We decline to hold that the doctrine of equitable recoupment applies on these facts and affirm the hearing officer's refusal to credit Siemens for the amount of compensating use tax paid by its New Mexico purchasers.

IT IS SO ORDERED.

APODACA, C.J., and HARTZ, J., concur.